Barbara VICKERS, Appellant,

v.

MISSOURI DEPARTMENT OF PUBLIC SAFETY, Respondent.

No. WD 69233.

Missouri Court of Appeals, Western District.

April 28, 2009.

Mark J. Murphy, Liberty, MO, for appellant.

Kristi L. Pittman, Kansas City, MO, for respondent.

Before Division One: Hon. HAROLD L. LOWENSTEIN, Presiding Judge, Hon. VICTOR C. HOWARD, Judge and Hon. THOMAS H. NEWTON, Chief Judge.

HAROLD L. LOWENSTEIN, Judge.

## I. INTRODUCTION

Barbara Vickers (Vickers) appeals the decision of the Labor and Industrial Relations Commission (Commission) denying her compensation under Chapter 287, the Workers' Compensation Act, for a claimed occupational injury. Vickers asserts that the Commission erred in affirming the Administrative Law Judge's (ALJ) determination that she failed to establish a causal connection between her work cleaning laundry for residents at the Missouri Veterans Home and her contraction of a bacterium, clostridium difficile. Vickers claims the Commission's decision is not supported by substantial and competent evidence because she established, by a reasonable probability, that she was exposed to and contracted an occupational disease resulting in her injury.

The decision of the Commission is reversed.

## II. FACTS

Vickers, now age 67, began her work cleaning laundry for residents at the Missouri Veterans' Home (Home) in April 2004. At the time of her employment, the Home was divided into four units: A, B, C, and D. Vickers worked in all four units collecting all of the residents' laundry, including linens, bed pads, sheets, blankets, and personal clothing. Vickers transported the laundry to the basement laundry facility and washed and dried the items.

Prior to beginning her work at the Home, Vickers underwent an orientation program addressing safety procedures in handling potentially infected laundry in order to prevent her from contracting disease. The program advised Vickers to wear protective gloves, mask and gown, and instructed her on proper hand washing technique after handling the laundry. During Vickers's period of employment, the Home treated approximately four to six patients infected with a contagious bacterium, clostridium difficile (C diff), known to colonize in and infect the bowels and colon. The specific units where C diff infected patients resided during their treatment at the Home is unknown. However, Vickers collected all of the residents' laundry from each of the four units at the Home and would often times handle laundry that was soiled with human excrement.

In late August 2004, Vickers consulted her personal physician due to a sinus infection. Her physician prescribed antibiotics, and after taking the medication for a few days, Vickers became seriously ill, experiencing diarrhea, nausea, chills, sweats, and a high fever. Vickers went to the emergency room for treatment. The treating physicians informed her that she had contracted C diff and an immediate surgical removal of her colon was necessary for her survival. The surgery left Vickers with all but six to eight inches of her colon and an ileostomy requiring her to attach an external pouch to her abdomen to collect intestinal waste. The surgery also caused numerous other physical and psychological complications. Vickers did not return to work and was subsequently discharged.

Vickers filed a claim for compensation in October 2004. The ALJ conducted a hearing in December 2006. The following is-

sues were presented at the hearing: (1) medical causation and whether Vickers's alleged injury was causally related to an alleged accident or occupational disease; (2) the Home's liability for temporary total disability; (3) the Home's liability for future medical aid; (4) the nature and extent of Vickers's permanent partial disability; and (5) the Home's liability for permanent and total disability benefits.

The ALJ found that Vickers failed to sustain her burden of proving that her injury was causally related to an accident or occupational disease. Specifically, Vickers "failed to establish, based on a reasonable probability, that she was exposed to C diff at the Home and that she contracted C diff there." The ALJ stated, "in order to sustain her burden, she should have produced credible evidence that she was in fact exposed to C diff while working for Employer and that she contracted the disease as a result of an exposure there." In deciding Vickers had not carried her burden of proof, the ALJ reasoned that Vickers "worked in Unit B, one of four units at the Veteran's home. She did not produce competent evidence that any patients infected with C diff were in her unit when she worked there." The ALJ stated that "[n]one of [the] witnesses testified that any C diff patients were in unit B where Claimant worked." Based on this rationale, the ALJ concluded that Vickers could not carry her burden of proving that she was in fact exposed to and contracted C diff while working at the Home. Further, because the causation issue was dispositive, the issues regarding liability and disability benefits were moot, and thus, the ALJ denied Vickers's claim for compensation.

On review, the Commission affirmed the ALJ's award and incorporated it by reference into the final award. However, the Commission recognized a mistake in the ALJ's rationale. The Commission stated that the ALJ incorrectly noted that Vickers "only worked in Unit B, one of four units" at the Home. The Commission corrected the ALJ's mistake, stating that Vickers performed laundry services in all four units for all of the Home's laundry needs, and her "handling of laundry was not limited solely to laundry from unit B." Nevertheless, the Commission agreed with the ALJ that Vickers "needed to prove that she was in fact exposed to C diff while working for employer and not merely show that she potentially had a greater risk of exposure." Because Vickers "failed to produce competent evidence that she handled laundry from any patients infected with C diff or that she contracted C diff from environmental contact at employer's facility," the Commission held that the outcome was still the same. The Commission decided that Vickers "failed to meet her burden of proof to show that she sustained an injury by accident or occupational disease arising out of and in the course of her employment." Moreover, she "did not produce competent and substantial evidence of the nature or extent of an exposure to C diff that would show the cause and effect relationship between C diff and the asserted exposure to it."

### III. Standard of Review

Article V, section 18 of the Missouri Constitution provides for judicial review of the Commission's award to determine whether the award is "supported by competent and substantial evidence upon the whole record." Section 287.495.1 [1] further mandates that appellate review the Commission's award is limited to questions of law and should be reversed only if: (1) the Commission acted without or in excess of

---

1. All statutory references are to RSMo 2000 unless otherwise indicated.

its powers; (2) the award was procured by fraud; (3) the facts found by the Commission do not support the award; (4) there was not sufficient competent evidence in the record to warrant the making of the award.

Absent fraud, the Commission's findings of fact are conclusive and binding on appeal. Section 287.495.1. Where, as here, the Commission's award attaches and incorporates the ALJ's award, this court (considers the findings and conclusions of the Commission as including the ALJ's award.) *ABB Power T & D Co. v. Kempker,* 236 S.W.3d 43, 48 (Mo.App.2007). Further, this court examines the whole record objectively, without viewing the evidence in the light most favorable to the award, to determine if it contains sufficient competent and substantial evidence to support the award; i.e., whether the award is contrary to the overwhelming weight of the evidence. *Hampton v. Big Boy Steel Erection,* 121 S.W.3d 220, 222–23 (Mo. banc 2003). "An award that is contrary to the overwhelming weight of the evidence is, in context, not supported by competent and substantial evidence." *Id.* at 223.

## IV. DISCUSSION

■ At issue is whether the Commission's award, denying Vickers benefits because she did not prove she was exposed to and contracted an occupational disease while working at the Home, is supported by sufficient competent and substantial evidence or is clearly contrary to the overwhelming weight of the evidence. Accordingly, Vickers's sole point on appeal contends that the Commission erred in finding that she failed to meet her burden of proving a causal connection be-

tween her injury and an occupational disease.

■ Section 287.067[2] provides that occupational diseases are compensable under the Missouri Workers' Compensation Act. *Kent v. Goodyear Tire & Rubber Co.,* 147 S.W.3d 865, 867 (Mo.App.2004). In order for a condition to constitute a compensable "occupational disease" under section 287.067, "[t]he statute requires that the condition be an 'identifiable disease arising with or without human fault and in the course of the employment.'" *Id.* (quoting section 287.067). "*Ordinary* diseases of life to which the general public is exposed outside of the employment shall not be compensable, except where the diseases follow as an incident of an occupational disease as defined in this section." Section 287.067.1 (emphasis added).

■ In this case, the Commission found that subsection 6 of section 287.067 is applicable because C diff is a "communicable disease." Subsection 6 states, "[a]ny employee who is exposed to and contracts any contagious or communicable disease arising out of and in the course of his or her employment shall be eligible for benefits under this chapter as an occupational disease." Section 287.067.6. Missouri courts have decided that "[a]rising out of" and "in the course of employment" are two tests that both must be met before an employee is entitled to compensation. *Simmons v. Bob Mears Wholesale Florist,* 167 S.W.3d 222, 225 (Mo.App.2005). "To meet the test of an injury 'arising out of' the employment, the injury must be a natural and reasonable incident of the employment, and there must be a causal connection between the nature of the duties or condi-

---

**2.** This court highlights that Section 287.067 was amended effective in 2005. However, Vickers filed her original claim before the amendment went into effect, and thus, the pre-amendment language applies. See *Lawson v. Ford Motor Co.,* 217 S.W.3d 345 (Mo. App.2007).

tions under which employee is required to perform and the resulting injury." *Id.* " 'In the course of employment' refers to the time, place and circumstances of an employee's injury." *Id.* Here, the Commission determined that Vickers failed to demonstrate that she was exposed to and contracted C diff while working at the Home. Specifically, the Commission found that Vickers did not prove she "sustained an injury by accident or occupational disease arising out of and in the course of her employment." In essence, the Commission decided that Vickers failed to carry her burden of proving causation.

■■■ In proving a causal connection between the conditions of employment and the occupational disease, the claimant bears the burden of proof. *Jacobs v. City of Jefferson*, 991 S.W.2d 693, 696 (Mo.App. 1999) (overruled in part on other grounds). "To prove causation it is sufficient to show 'a recognizable link between the disease and some distinctive feature of the job which is common to all jobs of that sort.' " *Kent*, 147 S.W.3d at 869 (quoting *Polavarapu v. Gen. Motors Corp.*, 897 S.W.2d 63, 65 (Mo.App.1995)). And, "there must be evidence of a direct causal connection between the conditions under which the work is performed and the occupational disease." *Estes v. Noranda Aluminum, Inc.*, 574 S.W.2d 34, 38 (Mo.App.1978). However, the cause and development of an occupational disease is not a matter of common knowledge. See *Jackson v. H.D. Lee Co.*, 772 S.W.2d 742 (Mo.App.1989). There must be medical evidence of a direct causal connection. *Jacobs*, 991 S.W.2d at 698. "The question of causation [is] one for medical testimony, without which a finding for claimant would be based on mere conjecture and speculation and not on substantial evidence." *Id.* at 696 (internal quotation omitted). "A claimant must submit medical evidence establishing a *proba-*

*bility* that working conditions caused the disease, although they need not be the sole cause." *Id.* at 698 (emphasis added.) "Even where the causes of the disease are indeterminate, a single medical opinion relating the disease to the job is sufficient to support a decision for the employee." *Dawson v. Associated Elec.*, 885 S.W.2d 712, 716 (Mo.App.1994).

In her appeal, Vickers claims that she met her burden of proving causation with sufficient competent and substantial evidence, and the Commission's decision is contrary to the overwhelming weight of the evidence. Particularly, Vickers argues that she demonstrated it was *reasonably probable* she was exposed to C diff at the Home and that she contracted C diff while working there. Vickers points to the record to support her contention. As previously stated, this court examines the whole record objectively, without viewing the evidence in the light most favorable to the award, to determine if it contains sufficient competent and substantial evidence to support the award; i.e., whether the award is contrary to the overwhelming weight of the evidence. *Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220, 222–23 (Mo. banc 2003).

First, there is no dispute as to whether Vickers was carrying C diff and demonstrated symptoms thereof during the time period she worked at the Home. In September 2004, Vickers underwent surgery after she was informed by her treating physicians that she was infected with C diff, and she was not discharged from her employment until sometime thereafter. Thus, the record demonstrates that Vickers was carrying C diff, which became symptomatic during the time period she worked at the Home. Second, the record contains undisputed testimony that C diff was present at the Home while Vickers worked there. Lois Rider, a registered

nurse at the Home at the time of Vickers's employment, testified that she was aware of at least one or two cases of patients with C diff at the Home while Vickers worked there, although there were probably more that she was unaware of. Patricia Sims, also a registered nurse at the Home, testified that during Vickers's period of employment, around four or five patients had C diff. Brian Hunt, an administrator at the Home, testified that the Home treated six patients with C diff during Vickers's period of employment. Hence, undisputed testimony shows that C diff was present in the Home while Vickers worked there.

Further, Nurse Rider testified that Vickers was the only person she could recall handling laundry during the night shift. Vickers testified that her duties at the Home included handling all of the residents' laundry from all four units in the facility. She washed bed pads, bed sheets, pillow cases, blankets, bed spreads, and personal clothing of all the residents. Often times, Vickers handled laundry that was soiled with human excrement. Testimony indicated that laundry of C diff infected patients was not otherwise segregated from laundry in the general patient population.

Two medical experts, Dr. John Fried and Dr. Scott Folk, testified on behalf of the Home and Vickers, respectively. Both experts considered parts of the preceding evidence and facts in testifying as to whether there was causal connection between the conditions of Vickers's employment at the Home and her contraction of C diff.

Dr. Folk, an infectious disease physician, testified on Vickers's behalf. Dr. Folk treated Vickers in the hospital for several days when she underwent surgery in September 2004 due to her C diff infection. Dr. Folk testified that he believed it was more likely than not that Vickers contract-ed C diff at the Home, and, in turn, her C diff infection necessitated medical care resulting in her current condition. Dr. Folk also suggested that certain individuals tend to be at higher risk for C diff infection, notably, patients taking antibiotic medication. Antibiotics rid the body of infection but also, to a varying degree, strip away some of the normal bacteria in the system, thus allowing C diff to flourish. In addition, about three percent of adults are normally colonized with C diff, and if these individuals take antibiotics, they are more susceptible to overgrowth of C diff bacteria. With respect to the means by which an individual contracts C diff, Dr. Folk testified that contamination has to occur through a fecal to oral route. However, there is no way to tell when an individual contracted C diff or how long C diff has resided in a person's system, as it can remain asymptomatic for months or years. Nonetheless, Dr. Folk concluded that Vickers work duties, handling fecally contaminated laundry day in and day out, consistently put her at a higher risk of C diff exposure and, moreover, that Vickers contracted C diff through a fecal-oral route. Consequently, Dr. Folk believed it was more likely than not that Vickers contracted C diff at the Home.

Dr. Fried, also a physician having a background in the field of infectious disease, reviewed Vickers's medical records indicating that she had C diff. When asked to determine whether Vickers contracted C diff at the Home, Dr. Fried stated that one could not say that she acquired the bacteria through her employment. Dr. Fried stated that C diff is a bacterium that lives in the colon. He stated that C diff can remain asymptomatic in a normal healthy individual for months while residing in the colon. That is, an otherwise healthy individual can carry C diff without showing any symptoms; i.e.,

diarrhea, chills, sweats, nausea, and fever. Between one and three percent of normal healthy individuals carry C diff bacteria. Therefore, it is difficult to tell how long an individual has carried C diff and, in addition, where in the environment an individual acquired C diff. With respect to the manner in which an individual contracts C diff, Dr. Fried testified that C diff is typically transmitted through a fecal to oral route. Someone who comes into contact with C diff infected feces can introduce live C diff bacteria into their mouth, typically through poor hygiene or by failing to take proper precautionary measures. In Vickers's case, however, Dr. Fried stated there was no specific documentation that Vickers was exposed to or came into contact with feces from a C diff infected patient. Dr. Fried also added that, if Vickers took precaution by properly washing her hands and wearing a mask, gown, and gloves, her risk of infection would be significantly lowered. Dr. Fried testified that over ninety-percent of C diff cases are antibiotic related. Antibiotics, such as those taken by Vickers, cause asymptomatic C diff to become symptomatic. Antibiotics are known to kill off certain bacteria allowing C diff bacteria to overgrow and, eventually, poison the colon. Dr. Fried concluded that, in Vickers's case, the introduction of antibiotics into her system caused the C diff she was already carrying to become symptomatic. Nevertheless, he could not say, *with certainty,* when she acquired C diff or whether it was acquired from her work environment.

 This court reviews the record to determine whether the Commission's award is contrary to the overwhelming weight of the evidence. *Hampton,* 121 S.W.3d at 223. In evaluating whether the Commission's decision is contrary to the overwhelming weight of the evidence, this court reviews the ALJ's finding as adopted by the Commission. *ABB Power T & D Co.,* 236 S.W.3d at 47. Here, the ALJ explicitly found Dr. Fried's testimony credible and explicitly discredited Dr. Folk's conclusions. However, as noted by the Commission, the ALJ substantiated his decision with erroneous information. The ALJ stated:

[Vickers] only worked in unit B, one of four units at the Veteran's home. She did not produce competent evidence that any patients infected with *C. diff* were in her unit when she worked there ... None of [the] witnesses testified that any *C. diff* infected patient were in unit B where [Vickers] worked ... Dr. Folk's statement in his report that it was more likely than not that Claimant contracted *Clostridium difficile* infection at the Missouri Veteran's Home in Cameron, Missouri is conclusory. I do not find Dr. Folk's statement credible. It is not based upon evidence of any specific exposure by Claimant to *C. diff.* His report and deposition testimony were not based upon any specific evidence that there were any infected patients in the area where Claimant worked, that Claimant handled any laundry of infected patients, or that Claimant otherwise had contact with infected persons. His report and deposition testimony were not based upon any evidence that Claimant in fact encountered conditions at work that exposed her to *C. diff,* or engaged in any conduct at work that resulted in her becoming infected ... there is no way to tell how [C diff] entered into [Vickers'] system, whether it was naturally occurring, through poor hygiene, or through a source completely unrelated to exposure at work ... Reasonable probability may not rest on speculation ... Claimant failed to satisfactorily prove that she contracted *C.diff* while working for Employer.

After highlighting the ALJ's error, the Commission concluded that the outcome is unchanged because Vickers failed to produce competent evidence that she handled laundry from any patients infected with C diff or that she contracted C diff from environmental contact at the Home. The Commission agreed with the ALJ that Vickers needed to prove that she was in fact exposed to C diff while working for employer and not merely show that she potentially had a greater risk of exposure. As such, Vickers failed to meet her burden of proving that her C diff infection arose out of and in the course of her employment.

The Commission in this case had to determine whether Vickers met her burden of showing that her occupation caused her C diff infection. Where, as here, a communicable disease is involved, subsection 6 of section 287.067 applies, and Vickers was required to demonstrate that she was exposed to and contracted the disease arising out of and in the course of her employment. Section 287.067.6. In order to meet that burden, Vickers had to "submit medical evidence establishing a *probability* that working conditions caused the disease." *Jacobs*, 991 S.W.2d at 698 (emphasis added); See also *Dawson v. Associated Elec.*, 885 S.W.2d 712 (Mo.App.1994). From the record, the testimony of Vickers's witnesses and medical expert, Dr. Folk, established such a probability. Dr. Folk opined that, more likely than not, Vickers contracted C diff while working at the Home. Chapter 287 does not require a claimant to establish, by a *medical certainty*, that his or her injury was caused by an occupational disease in order to be eligible for compensation. In fact, the medical experts for both sides in this case agreed that determining exactly when Vickers contracted C diff would be impossible. Under 287.067, however, a single medical expert's opinion may be competent and

substantial evidence in support of an award of benefits, even where the causes of the occupational disease are indeterminate. *Kelley v. Banta & Stude Constr. Co.*, 1 S.W.3d 43, 48 (Mo.App.1999). Thus, the record demonstrates that Vickers put forth sufficient evidence to carry her burden of proving causation.

 In this case, it is important to note that the ALJ discredited Dr. Folk's testimony and explicitly determined that Dr. Fried's testimony was credible. Generally, "[w]here the opinions of medical experts are in conflict, the fact finding body determines whose opinion is the most credible." *Id.* at 48. "Where there are conflicting medical opinions, the fact finder may reject all or part of one party's expert testimony which it does not consider credible and accept as true the contrary testimony given by the other litigant's expert." *Id.* However, even though the ultimate determination of credibility of witnesses rests with the Commission, the Commission should take into consideration the credibility determination made by the ALJ. *Kent*, 147 S.W.3d at 871. Here, the ALJ's credibility determinations were based on erroneous information. "If the evidence lends itself to differing factual inferences, the court is obligated to defer to the administrative agency's findings unless those findings are contrary to the overwhelming weight of the evidence." *Id.* at 869. Upon evaluating the testimony of the witnesses and medical experts in total, this court finds that the agency's findings, with respect to causation, are contrary to the overwhelming weight of the evidence. *Hampton*, 121 S.W.3d at 222–23. The record established that Vickers was exposed to C diff while working at the Home. The disease here is not an *ordinary* disease of life to which the general public is exposed outside of employment, as contemplated by section 287.067. Both medical experts tes-

tified that C diff is present in only one to three percent of the population, and Vickers was exposed to this disease during the course of her employment. Vickers's medical expert established a *probability* that she contracted C diff at the Home and that her work conditions caused the occupational disease resulting in her injury. According to section 287.067, a communicable disease is compensable if the claimant puts forth evidence that she was exposed to and contracted the disease arising out of and in the course of her employment. Section 287.067.6. Vickers put forth such evidence and, therefore, is eligible for benefits.

The decision of the Commission is reversed and remanded to determine the amount of temporary and permanent benefits as well as the extent of medical payments due to the claimant.

All Concur.