Larry **BUSBY**, Claimant–Respondent,

v.

**D.C. CYCLE LTD.**, Employer,

and

**Missouri State Treasurer as Custodian of the Second Injury Fund,** Insurer–Appellant.

No. SD 29464.

Missouri Court of Appeals, Southern District, Division Two.

Aug. 31, 2009.

---

Cara Lee Harris, Springfield, MO, for Appellant.

Ellen E. Morgan, Webster Grove, MO, for Respondent.

DON E. BURRELL, Presiding Judge.

Larry Busby ("Claimant") was injured during the course and scope of his employment with D.C. Cycle Ltd. ("D.C. Cycle"), a business that sold parts for and repaired and serviced motorcycles. D.C. Cycle did not maintain workers' compensation liability insurance. The sole issue in this appeal is whether there was substantial and competent evidence to support the Labor and Industrial Relations Commission's (the "Commission") finding that Shirley Hutchison ("Shirley[1]") and Michelle "Chelly" Bennett ("Chelly") were "employees" of D.C. Cycle for purposes of the Workers' Compensation Law (the "Act"). If so, D.C. Cycle was subject to the Act's requirement that employers with five or more employees maintain workers' compensation liability insurance[2] and its failure to do so would obligate the Second Injury Fund (the "Fund") to pay any benefits Claimant was entitled to receive.

---

1. We use first names for the purpose of clarity, as two of the persons we refer to in this opinion share the same surname. In doing so, we intend no disrespect.

2. An exception to this requirement for businesses that qualify to self-insure is not applicable in this case.

The Administrative Law Judge ("ALJ") found that Claimant met his burden of proving that both Shirley and Chelly were "employees" for purposes of the Act and that D.C. Cycle was thereby an "employer" under section 287.030.1(3).[3] Because D.C. Cycle had not procured the required insurance, the ALJ directed the Fund to pay Claimant's workers' compensation benefits. The Fund sought review of the ALJ's decision before the Commission, which affirmed the ALJ's decision and adopted his findings as its own. The Fund now appeals that decision.[4]

Because we find the Commission's conclusion that Shirley and Chelly were "employees" for purposes of the Act was supported by sufficient competent and substantial evidence, we affirm its award.

### I.  Standard of Review

■ We review the entire record to determine whether the Commission's award is supported by sufficient competent and substantial evidence. *Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220, 222–23 (Mo. banc 2003). "This standard would not be met in the rare case when the award is contrary to the overwhelming weight of the evidence." *Id.* at 223. "Where, as here, the Commission incorporates the ALJ's award and decision, we consider the findings and conclusions of the Commission as including the ALJ's

award." *Breeze v. Helm & Sons Lumber Co.*, 23 S.W.3d 886, 887 (Mo.App. S.D. 2000).

■ We only review questions of law and "[s]tatutory construction and the determination of whether the evidence demonstrates that an alleged employer had sufficient employees to qualify for that status are questions of law." *Id.* Nevertheless, determining whether one is an employee is unavoidably predicated upon certain findings of fact: 1) whether the person was "in the service" of the employer; and 2) whether that service was controllable by the employer. *Williams v. City of St. Louis*, 583 S.W.2d 556, 558 (Mo.App. E.D.1979). "With regard to factual issues, the appellate court defers to the [Commission's] decisions regarding the weight given to witnesses' testimony, and is bound by the Commission's factual determinations when the evidence supports either of two opposing findings." *Kent v. Goodyear Tire & Rubber Co.*, 147 S.W.3d 865, 868 (Mo.App. W.D.2004).

■ In conducting our review, we are mindful that the version of section 287.800 in effect at the time of Claimant's injury directed that the provisions of the Act were to be "liberally construed with a view to the public welfare" and "to extend its benefits to the largest possible class." *McFarland v. Bollinger*, 792 S.W.2d 903, 905 (Mo.App. S.D.1990).[5] "Such rules of

---

3. Section 287.030.1(3) provides that a business must have five or more employees to be deemed an employer for purposes of the Act. Unless otherwise indicated, all references to statutes are to RSMo 1990, the version of the Act in effect at the time of Claimant's injury.

4. D.C. Cycle filed an application to file a brief in support of the Fund's legal position, but the Commission denied the application because D.C. Cycle had not filed a bond in the amount of the award against it. *See* section 287.480.2, RSMo 2000.

5. This stands in contrast to the current version of section 287.800, which states: "Administrative law judges, associate administrative law judges, legal advisors, the labor and industrial relations commission, the division of workers' compensation, and any reviewing courts shall construe the provisions of this chapter strictly." Section 287.800.1, RSMo Cum.Supp.2009. As a result, the cases we have cited herein that liberally construed the Act to favor coverage may not provide proper guidance in construing the Act's provisions in cases involving incidents that occurred after the effective date of the 2005 amendment to

construction do not, however, relieve claimant of his burden to prove his claim to be within Workers' Compensation Law's provisions." *Id.*; *See Breeze,* 23 S.W.3d at 891.

## II. Discussion

Under section 287.030.1(1), any person "using the service of another for pay" is an "employer," but to be subject to the Act, the employer must have "five or more employees." Section 287.030.1(3). If an employer that does not qualify to self-insure has five or more "employees," it is required to insure its entire liability with an authorized insurance carrier. Section 287.280.1, RSMo 1994. It is undisputed that D.C. Cycle had three employees, including Claimant and Don Bennett ("Don"), D.C. Cycle's president and manager of operations. At issue is whether Shirley, a friend of Don and Chelly, and Chelly, Don's wife and vice-president of D.C. Cycle, were also "employees" at the time of Claimant's injury.

■■ Section 287.020.1 defines an "employee" "to mean every person in the service of any employer ... under any contract of hire, express or implied, oral or written, or under any appointment or election, including executive officers of corporations." "An uncompensated volunteer can be covered by workers' compensation as an employee by 'appointment.'" *Talir v. Mid–West Area Agency on Aging,* 848 S.W.2d 517, 518 (Mo.App. E.D.1993) (citing *Stegeman v. St. Francis Xavier Parish,* 611 S.W.2d 204, 206 (Mo. banc 1981)). In determining if the employer had control over the employee, courts have examined a number of factors, including: 1) the extent of control; 2) the actual exercise of control; 3) the duration of employment; 4)

the right to discharge; 5) the method of payment; 6) the degree to which the alleged employer furnishes the equipment; 7) the extent to which the work is the regular business of the employer; and 8) the employment contract. *Burgess v. Na-Com Cable Co.,* 923 S.W.2d 450, 452 (Mo. App. E.D.1996). "No one factor is dispositive, but each is relevant to the issue." *Id.*

*Was Shirley an Employee of D.C. Cycle?*

■ The Fund does not contest that Shirley was in the service of D.C. Cycle, but rather contends that the "volunteer services provided to [D.C. Cycle] by Shirley Hutchison do not present the degree of controllable services to constitute an employee by appointment." In determining whether D.C. Cycle had a sufficient degree of control over Shirley, we will now review this evidence in light of the aforementioned factors.

*1. & 2. Control Exercised by D.C. Cycle*

At the hearing, Claimant impeached Don with deposition testimony he had given in 2001. In that deposition, when asked if he "direct[ed]" Shirley, Don stated that he "handed her the books." He stated that he had "no knowledge of bookkeeping," that he "only provided the books to her," and that they "agreed upon a time that [Shirley] was going to be there, but [he] did not tell her when to come in or how long to stay or what [he] wanted done with the books." He also stated that Shirley "[b]alanced the checkbook and recorded payroll receipts," did the "quarterly filings," and "compiled the sales tax figures" for D.C. Cycle. Further, he stated

section 287.800. *See, e.g., Allcorn v. Tap Enter.'s, Inc.,* 277 S.W.3d 823, 830 (Mo.App. S.D.2009).

that she figured D.C. Cycle's employees' W–4s and W–2s.

At the hearing on Claimant's claim, Don changed his testimony and represented that he produced all figures used by D.C. Cycle and that Shirley's role was limited to reviewing his work. Don stated that Shirley set up a mock business system on D.C. Cycle's computer so she could learn bookkeeping and he "helped instruct [Shirley] what to do with it, how [he] made entries, and what [he] did with [his] regular accounting." Don said that if Shirley saw something that he did wrong "as far as mathematical errors, she might tell [him]. But all figures that were produced from the tax records and employment accountability records, [he] produced." Don stated that his contrary deposition testimony was in error because he was "very frustrated" and "wanted to get out of the room."

Shirley's testimony, via deposition, was that she had no set working hours, could leave anytime she wanted, and was not instructed by Don on how to check the figures. She stated, however, that she did double-check the payroll figures and occasionally looked at the sales tax figures. She also stated that part of the reason she was being deposed was to testify on behalf of her friend, Don, and that she was not an employee of D.C. Cycle.

If believed by the Commission, Don's deposition testimony constituted substantial and competent evidence indicating the existence of an employer-employee relationship (a point counsel for the Fund conceded at oral argument) between D.C. Cycle and Shirley. Don originally testified under oath that he and Shirley agreed upon a time when she would be at D.C. Cycle and that Shirley balanced D.C. Cycle's checkbook, recorded payroll, compiled the quarterly tax filings and sales tax figures, and that she figured D.C. Cycle's W–4s and W–2s. Later, Don changed his testimony to indicate that he only helped "instruct" Shirley on how he did his accounting and that she would tell him if she found an error in the work he had completed. At a minimum, there was substantial and competent evidence that Shirley followed D.C. Cycle's accounting process at Don's instruction to inform Don of any errors in his work. At a maximum, she was in charge of most, if not all, of D.C. Cycle's bookkeeping. As such, these two factors favor a finding that an employer-employee relationship existed.

### 3. Duration of Employment

In his deposition, Don stated that Shirley did the books for D.C. Cycle for approximately three years and worked ten to twelve hours a month. At the hearing, Don stated that Shirley "came by with no frequency approximately once a month and looked over the bookkeeping that [he] did during the month's time." He said Shirley would come by approximately once per month and that she had no set working hours. In harmony with his deposition testimony, Don said Shirley did bookkeeping at D.C. Cycle for approximately three years.

Shirley testified that she came into D.C. Cycle approximately once per month for two to three hours and did not spend ten to twelve hours a month there. Claimant testified that he saw Shirley doing bookwork at D.C. Cycle approximately once a week, typically on Saturdays.

The evidence that Shirley worked for D.C. Cycle for three years is favorable to the existence of an employer-employee relationship. The testimony about whether Shirley worked ten-to-twelve hours per month or two-to-three hours per month, and whether Shirley came by D.C. Cycle approximately once per month or every Saturday, was in conflict. Which of this testimony was more credible was for the

Commission to determine. Based on the testimony favorable to its findings (which constituted substantial and competent evidence), this factor also supported the existence of an employer-employee relationship.

### 4. Right to Discharge

At the hearing, Don stated that Shirley could come and leave D.C. Cycle as she chose. In her deposition, Shirley also stated that she could quit anytime she wanted. This evidence weighs neither in favor of nor against a finding that an employer-employee relationship existed.

### 5. Method of Payment

Both Don and Shirley testified that she was not paid for her work, and there was no evidence to the contrary. This factor weighs in favor of a finding that no employer-employee relationship existed.

### 6. Degree to which the Alleged Employer Furnishes the Equipment

At the hearing, Chelly testified that she trained Shirley in bookkeeping by using a "dummy" corporation she had set up on Don's computer. She also stated that she used Don's records to illustrate certain bookkeeping principles. " 'When it is the employer who furnishes the equipment, the inference of right of control is a matter of common sense and business.' " *State v. Turner*, 952 S.W.2d 354, 358 (Mo.App. W.D.1997) (quoting *Hinton v. Bohling Van & Storage Co.*, 796 S.W.2d 87, 90 (Mo.App. E.D.1990)). This factor weighs in favor of the existence of an employer-employee relationship.

### 7. Extent to which the Work is the Regular Business of the Employer

First, we note that it is undisputed that Shirley's work was continuous rather than intermittent. There was evidence that Shirley worked for D.C. Cycle for approximately three years, anywhere from once a week to once a month. Second, although D.C. Cycle is in the business of servicing motorcycles and selling motorcycle parts, "bookkeeping" is a necessary and incidental part of any business. *See State ex rel. Elson v. Koehr*, 856 S.W.2d 57, 61–62 (Mo. banc 1993) (noting in the context of a venue dispute involving an airline that *State ex rel. Hines v. Calhoun*, 281 Mo. 583, 220 S.W. 6, 10 (1920), stated that keeping the books and accounts of its business transactions is a part of the "usual and customary business" of a railroad company). If Shirley or Don did not keep the books for D.C. Cycle, then either another D.C. Cycle employee or an independent contractor would have had to perform this function. There was substantial and competent evidence to support a finding that Shirley's work was a regular part of D.C. Cycle's business as D.C. Cycle had to pay its employees and file its taxes in order to continue to operate. This factor favors a finding that an employer-employee relationship existed.

### 8. Employment Contract

There was no evidence that Shirley had any sort of an employment contract. There was also no evidence that any D.C. Cycle employee had an employment contract. Thus, this factor weighs neither in favor of nor against a finding that an employer-employee relationship existed.

Under the employer-employee test, we conclude (based mostly on Don's deposition testimony) that there was substantial and competent evidence to support the Commission's finding that Shirley was an employee by appointment of D.C. Cycle based on its control over Shirley. Although Shirley had no employment contract, was unpaid, and could have been "discharged" at any time, D.C. Cycle in-

structed Shirley on how to conduct her bookkeeping work, Shirley actually performed bookkeeping services for D.C. Cycle on a continual basis for three years, D.C. Cycle provided the equipment Shirley used to conduct her work, and Shirley's work was a part of the regular business of D.C. Cycle. The Commission's finding is also consistent with the Act's provision (in effect at the time of Claimant's injury) that it was to be liberally construed with a view toward the public welfare and to extend its benefits to the largest possible class.

*Was Chelly an Employee of D.C. Cycle?*

■ The Fund also does not dispute that Chelly was in the service of D.C. Cycle. The Fund's contention is that there was no evidence that D.C. Cycle "ever had, or exercised, any control" over Chelly. However, because Chelly was an officer of D.C. Cycle, the process we use to determine whether she was also an employee of D.C. Cycle at the time of Claimant's injury is different than the one we applied to Shirley. Instead of focusing on control, it looks to the level of her actual participation in the business. Section 287.020.1 [6]; *McFarland,* 792 S.W.2d at 905–08.

Chelly testified that she was an officer and shareholder of D.C. Cycle; that she was not compensated for being an officer; that "[o]utside of a meeting of the officers, [she] did no work for the company"; that Don "gave reports periodically when [they] would have officers' meetings ... [e]very couple of months"; and that there may have been an occasion where "[i]f [D.C. Cycle] [was] extremely busy, [she] might answer the phone and put the customer on hold until someone could get to them. But, as far as working there, [she] [didn't] have the knowledge to be able to work there then or now." Chelly also testified that she came into D.C. Cycle to teach Shirley accounting approximately once per week for an hour.[7] Chelly stated that she used Don's records and set up a "dummy" corporation on Don's office computer to help train Shirley, but that this training was not related to D.C. Cycle.

Don testified that Chelly was a shareholder and officer of D.C. Cycle but that she was not active in the business of the corporation. He stated that D.C. Cycle had three officers because he was required by the State of Missouri to have three listed officers when he incorporated D.C. Cycle. He stated that Chelly received no compensation from D.C. Cycle; that she did not regularly perform any services for the business; that she came by D.C. Cycle only "once every three to four weeks"; that she did not answer the phone for D.C. Cycle or "talk to any of the customers about their needs or necessities"; but "[i]t would be possible if she were standing there and a phone is ringing and nobody is beside it, she may pick it up." Don also denied that Chelly was an employee of D.C. Cycle in his 2001 deposition testimony, but, when asked if she worked at the business, he replied: "She stopped by and would stand at the counter and talk to customers for 30 to 45 seconds at a time." Don also testified that Chelly was on the signature card for D.C. Cycle's checking account.

---

**6.** Section 287.020.1 actually refers to "executive officers"—a term not defined in the Act. The Fund's brief simply presumes that Chelly, as vice-president of D.C. Cycle, is an "executive officer" and then argues that her participation in the business activities of D.C. Cycle was insufficient to make her an "employee" under the principles we set forth in *McFar-* *land.* Without specifically deciding the matter, we will also assume that Chelly was an executive officer of D.C. Cycle.

**7.** Chelly's full time job at the time of Claimant's injury was as a corporate tax accountant with a major accounting firm.

Shirley's testimony was that Chelly would "[o]ccasionally" answer the phone for D.C. Cycle and that Chelly would look at the books with her, but "not Don's books specifically ... as a practice for her work as an accountant." Shirley testified that Don did not give her (Shirley) any direction on double-checking payroll, but Chelly did.

At the hearing, Timothy Nielsen, a customer of D.C. Cycle, testified that Chelly was "[s]ometimes" at D.C. Cycle when he patronized it, but he did all of his business with Don. He stated that he did observe Chelly behind the counter at D.C. Cycle and she would "[m]aybe like [sic] pick up the phone when it rings."

Claimant testified that Chelly "worked behind the counter"; that she was "in there on a weekly basis"; worked "part-time hours"; that she answered the phone for the business as "D.C. Cycle"; and that he "actually observe[d] [Chelly] taking customers' money, giving customers receipts, and taking orders over the phone or answering questions about parts in stock."

"Section 287.020.1 has been held to include executive officers of corporations irrespective of whether or not these officers rendered controllable services or exercised control over others." *McFarland*, 792 S.W.2d at 905 (citing *Lynn v. Lloyd A. Lynn, Inc.*, 493 S.W.2d 363, 366 (Mo.App.St.L.D.1973)) ("If by reason of their employment they were subjected to the hazards of the occupation or industry, then under the liberal extension of the Workmen's Compensation Act and the directive of the Legislature contained in this section, they should be considered employees within the terms of the act."). Still, proof that a person was an executive officer, standing alone, does not make that person an employee within the meaning of the Act. *McFarland*, 792 S.W.2d at 906. It still must be proved that the officer is involved in the operation of the business or is subjected to the hazards of the occupation or industry. *Id.* at 906–07. Executive officers who "do nothing but lend their name to the position and perform no service for the corporation" are not to be counted as employees. *Id.* at 907.

It is undisputed that Chelly was an officer and shareholder of D.C. Cycle, that she attended officers' meetings every couple of months, and that she was a signatory on the corporate checking account. The Fund contends, however, that she was an executive officer in name only, and that she was not involved in the operation of the business. There is substantial and competent evidence in the record, however, to suggest otherwise. Mr. Nielsen testified that he observed Chelly behind the counter and that she might answer the business's telephone. Claimant testified that Chelly worked part-time behind the counter on a weekly basis, answering the phone and taking customer's orders. In his 2001 deposition, Don testified that Chelly "stopped by [D.C. Cycle] and would stand at the counter and talk to customers for 30 to 45 seconds at a time." Shirley also testified that Chelly would occasionally answer the phone for D.C. Cycle. Chelly testified that if D.C. Cycle was "extremely busy, [she] might answer the phone and put the customer on hold until someone could get to them."

Furthermore, by admitting that she came into D.C. Cycle approximately once per week for an hour to teach Shirley accounting, whether also answering the business phone or not, Chelly was subjected to the hazards of the workplace. This, combined with the testimony of Don, Claimant, and Mr. Nielsen, plus the fact that she was a shareholder and executive officer, constituted competent and substantial evidence in support of the Commission's finding that Chelly was also an "em-

ployee" of D.C. Cycle—especially when the Act is construed liberally to favor coverage, as it must be in this case.

Because the Commission's finding that D.C. Cycle had at least five employees was supported by sufficient competent and substantial evidence, the decision of the Commission is affirmed.

LYNCH, C.J., and RAHMEYER, J., Concur.