Peggy CAMBRON, Claimant–Appellant,

v.

**TREASURER OF STATE of Missouri, as Custodian of Second Injury Fund, Respondent–Respondent.**

**No. SD 31814.**

Missouri Court of Appeals, Southern District, Division One.

Jan. 7, 2013.

---

Michael Moroni, Bloomfield, MO, for Appellant.

Chris Koster, Attorney General, Jefferson City, MO, and Gregg N. Johnson, Assistant Attorney General, Cape Girardeau, MO, for Respondent.

GARY W. LYNCH, P.J.

Peggy Cambron ("Claimant") appeals a final award of the Labor and Industrial Relations Commission ("the Commission") awarding permanent partial disability ("PPD") benefits, contending that the award is against the overwhelming weight of the evidence such that the Commission was required to award her permanent total disability ("PTD") benefits. Finding no merit in her contentions, we affirm.

### Factual and Procedural Background

On July 15, 2000, while employed part time as a home care aide, Claimant sustained an injury to her lower back while lifting a patient out of a wheelchair. Initially, Claimant received conservative medical care for a large herniated disc to the right at L5–S1, with compression of the right S1 nerve root. Ultimately, back fusion surgery was performed in February 2003.

Following her injury, multiple medications and antidepressants were prescribed for Claimant. Although symptoms of depression and anxiety were not initially listed in her medical records, some of those records indicated that Claimant had once been prescribed medication for "psychiatric problems" early in 2000. Those prescriptions were never re-written or re-filled, however, the same doctor who prescribed such "psychotropic medications" "added depression as a diagnosis in 2001." Claimant's medical records also revealed complaints of lower back pain shortly before July 15, 2000.

Claimant asserted in her claim for compensation, as amended, that she was entitled to PPD benefits from her employer and its insurer on her July 15, 2000, primary claim and that she was entitled to PTD benefits from the Second Injury Fund ("the Fund") based upon pre-existing disabilities, i.e., "Low Back June/July 2000" and "Previous depression[.]" Before hearing, Claimant settled her primary claim against her employer and its insurer for "40% permanent partial disability of the body as a whole, referable to the back[.]" The Fund's liability for either PPD or PTD was the sole issue to be decided by the Commission.

At the hearing on the claim before the Administrative Law Judge ("ALJ"), ten exhibits consisting of Claimant's medical records and the depositions or reports of five medical doctors and two vocational experts were admitted into evidence without objection. The only other evidence was Claimant's live testimony.

Following the hearing, the ALJ issued a Final Award, finding that Claimant failed to meet her burden of proof on the PTD issue; however, Claimant "met her burden of proof and [the Fund] does bear liability for permanent partial disability[.]" The ALJ further found that Claimant "has a 15% permanent partial disability of the body as a whole due to her pre-existing conditions"; Claimant "has a 40% permanent partial disability due to the disabilities from" her work-related injury; Claimant's "pre-existing conditions were a hindrance or obstacle to employment or re-employment and synergistically combine with the disabilities from the accident

of July 15, 2000[,] such that the combined disabilities are greater than the simple sum[,]"; and "that a 10% load is appropriate in this case." The ALJ ordered the Fund to pay Claimant $3,564.00.[1]

Upon Claimant's petition for review, the Commission affirmed the ALJ's decision and award and adopted the ALJ's findings and decision as its own. Claimant's appeal timely followed.

### Standard of Review

In this case, we review the ALJ's findings and decision as adopted by the Commission. *Portwood v. Treasurer of Missouri*, 219 S.W.3d 289, 291–92 (Mo.App. 2007). On appeal from a final award of the Commission, this Court will affirm the award unless we find that the Commission acted beyond its power, the award was procured by fraud, the facts do not support the award, or the award is not supported by sufficient competent evidence. Section 287.495.1, RSMo 2000.

In our review, this Court "must examine the whole record to determine if it contains sufficient competent and substantial evidence to support the award, i.e., whether the award is contrary to the overwhelming weight of the evidence." *Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220, 222–23 (Mo. banc 2003). "Whether the award is supported by competent and substantial evidence is judged by examining the evidence in the context of the whole record." *Id.* at 223. "An award that is contrary to the overwhelming weight of the evidence is, in context, not supported by competent and substantial evidence." *Id.*

1. The amount was calculated as 15% × 400 = 60 weeks (representing PPD of the body as a whole due to pre-existing conditions), 40% × 400 = 160 weeks (representing PPD of the body as a whole referable to the back due to the primary injury), 60 weeks + 160 weeks = 220 weeks (representing the simple sum of the disabilities), 220 weeks × 10% = 22 weeks (representing the 10% load for the synergistic combination of the disabilities); and 22 × $162.00 (Claimant's stipulated weekly rate of compensation for PPD and PTD) = $3,564.00.

Questions of law are reviewed *de novo*. *Ellis v. Mo. State Treasurer*, 302 S.W.3d 217, 219 (Mo.App.2009). On issues of fact and the weight and credibility accorded to conflicts in evidence, we defer to the Commission. *Id.* Furthermore, it is within the province of the Commission to determine credibility of witnesses, and the Commission may accept or reject the medical evidence presented. *Smith v. ConAgra, Inc.*, 949 S.W.2d 917, 922 (Mo.App. 1997), *overruled on other grounds in Hampton*, 121 S.W.3d at 226. In this case, Claimant's compensable injury was sustained prior to the 2005 revisions to section 287.800, which formerly provided that the workers' compensation law "shall be liberally construed with a view to the public welfare" and "to extend its benefits to the largest possible class." *See Busby v. D.C. Cycle Ltd.*, 292 S.W.3d 546, 549–50 (Mo. App.2009). However, a liberal construction of the law does not relieve a claimant of the burden to prove all essential elements of her claim. *See id.*

### Discussion

Claimant raises two points relied on, alleging in both points that the Commission's "decision is not supported by competent and substantial evidence ... and is against the overwhelming weight of the evidence[.]"

### Commission's Credibility Determinations Were Not Erroneous

Claimant's first point is:

The Labor and Industrial Relations Commission erred in finding that the Claimant was only permanently and partially disabled and not permanently and totally disabled and the decision is not supported by competent and substantial evidence as required by RSMo. 287.495, and is against the overwhelming weight of the evidence and is clearly wrong because the evidence showed that the claimant was permanently and totally disabled because of a combination of the primary and pre-existing injuries and that the Commission's credibility determinations concerning the testimony and exhibits[ ] were not supported [by] the competent and substantial evidence and were against the overwhelming weight of the evidence and were clearly wrong.

In cases where an employee's pre-existing partial disability combines with a subsequent compensable work injury to produce a greater permanent disability, the Fund is liable for that portion of the disability that is attributed to the pre-existing condition, limiting the employer's liability to that part of the disability attributed to the last injury alone. *Gassen v. Lienbengood*, 134 S.W.3d 75, 79 (Mo.App. 2004). Fund liability is triggered only by a finding that at the time the work injury is sustained, there existed an actual and measurable disability. *Portwood*, 219 S.W.3d at 294–95. Here, there is no dispute regarding the Fund's liability in Claimant's case. The Commission found that the Fund is liable for PPD benefits, and the Fund has not appealed that determination.

The type of benefits that a claimant is entitled to recover from the Fund, whether PPD or PTD, "depends on the resulting combination of [a] claimant's last injury and pre-existing permanent partial disabilities." *Dunn v. Treasurer of Mo.*, 272 S.W.3d 267, 272 (Mo.App.2008). To be entitled to PTD benefits, it is not required that a claimant be completely inactive or inert. *Carkeek v. Treasurer of State of Mo.*, 352 S.W.3d 604, 608 (Mo.App.2011). The claimant must prove that the last injury in combination with a pre-existing permanent partial disability results in PTD. *Dunn*, 272 S.W.3d at 272. Under section

287.020.7, RSMo 2000, "[t]he term 'total disability' shall mean inability to return to any employment and not merely mean inability to return to the employment in which the employee was engaged at the time of the accident." "Any employment" has been interpreted to mean "any reasonable or normal employment or occupation." *Carkeek*, 352 S.W.3d at 608. The approved legal standard for determining PTD applies two tests: in general, whether the claimant is able to compete on the open job market; and, specifically, whether an employer would reasonably be expected to employ the claimant in his or her present physical condition. *Mathia v. Contract Freighters, Inc.*, 929 S.W.2d 271, 275 (Mo.App.1996).

Opinions from two vocational specialists were considered by the Commission. James M. England, Jr., a vocational rehabilitation counselor, was retained by the Fund to evaluate Claimant's employability and met with Claimant on October 18, 2005, for this purpose. Claimant advised Mr. England that "she first injured her back at work while helping a patient transfer" in June 2000. England administered vocational tests, including "the Wide–Range Achievement Test, Revision 3," and "the reading comprehension portion of the Adult Basic Learning Examination." Mr. England concluded that Claimant "scored at the 7th grade, 6th month level" in reading comprehension, which would enable her to "handle basic functions found in a variety of entry-level service employment." He also requested that Claimant complete the "Career Assessment Inventory," which she did; however England noted that Claimant "took a very negative approach in filling out the form[,]" and all of the choices under general interest themes fell in the very low range. England opined that part of the problem was that Claimant demonstrated "virtually no interest in retraining for any alternative." Based upon his review of Claimant's medical treatment records and physical restrictions imposed by physicians, England opined that Claimant "should be able to function in basic service positions such as some security jobs, some cashiering positions, work as a mail distribution clerk in an office setting, as a file clerk, and small parts assembly or packing."

Susan Shea is a certified rehabilitation counselor who evaluated Claimant in March 2007 and subsequently submitted a report based upon her evaluation and review of Claimant's medical records. Shea's deposition was admitted at the hearing. Shea testified that Claimant cannot return to her work as a home health aide or in any occupation. According to Shea, in order to perform "a full range of sedentary activities" requires that a person is "able to sit up to six hours a day, stand up for two hours a day, be able to occasionally lift up to 10 pounds." In her evaluation regarding Claimant's employability, Shea also took into account Claimant's alleged lack of transferable skills, Claimant's eighth-grade education and lack of academic skills, and Claimant's "approaching advanced age." Shea stated that "it is just considered more difficult for an individual [over fifty years of age] to adjust to new types of work." In regard to the fact that Claimant only completed the eighth grade, Shea believed that many employers would not want to employ Claimant because of that. Shea also mentioned that Claimant "expressed a level of pain that would not allow her to work[,]" in addition to Claimant's reliance on narcotic medications that make her drowsy and affect her concentration. Shea further opined that the typical employer would be concerned about insurance costs and desired an individual who does not have special needs and who would be to work each day on time.

The Commission found "the opinion of Mr. England to be more credible than the opinion of Ms. Shea on permanent total disability." Nevertheless, on appeal, Claimant contends that "the Court should find most persuasive the vocational testimony of Susan Shea." Claimant contends that England did not consider any of Claimant's "mental conditions and depression[,]" and further contends that Shea "considered all of those factors, and as such Ms. Shea's opinion is entitled to more weight." Claimant's contention is incorrect for two reasons: England did consider the evidence of Claimant's depression, and Shea did not.

First, England considered all of the evidence of Claimant's depression. He reviewed the medical records of Dr. Hoja, Claimant's primary care physician, beginning in 1988. Those records disclosed that Claimant had once been prescribed medication for "psychiatric problems" early in 2000. England noted that on February 5, 2001, Dr. Hoja added depression to Claimant's diagnoses, and Wellbutrin was prescribed. He also reviewed Dr. Raskas' record of his independent medical examination of Claimant on February 27, 2002, wherein Dr. Raskas noted that Claimant's medical history was significant for several medical issues including depression. England also observed that Dr. Hoja, as of July 8, 2002, continued to follow Claimant for her depression. During her interview, Claimant told England that she had good overall health prior to June of 2000, when she first injured her back at work while helping a patient transfer, and that in July 2000 she injured her back again while helping the same patient. England noted that Claimant's current medications at that time included "Effexor XR 75 mg once a day for depression." Her primary complaint at the time of her interview with England was "pain in her low back going into her right leg at times." At that time,

none of Claimant's medical records indicated any restrictions upon Claimant due to depression or any other mental condition. The only restrictions were those placed upon Claimant's physical activities by Dr. Raskas due to her back problems.

■ Second, Shea did not consider Claimant's pre-existing conditions. She testified that she did no examination or testing, relying in part on the history provided by Claimant. Yet Claimant never advised Shea of previous employment, pre-existing back problems, anxiety, or depression. These purported pre-existing issues were not considered in Shea's evaluation. Shea admitted her opinion "does not take into account any pre-existing low back or depression or anxiety[.]" or "any injury to her cervical spine that may have pre-existed July 15th of 2000[.]" Shea states in her report, "I do not know if the depression existed prior to the industrial accident." Shea considered only Claimant's back injury of July 15, 2000, and none of the treatment records Shea reviewed indicated back problems, medications, other employment, or psychological issues prior to July 15, 2000. The Commission found that Shea's "opinion is affected by her statement that she did not know if [Claimant] had pre-existing depression." Claimant had to establish that "an actual or measurable disability existed at the time of the last injury" and combined with the last injury to render Claimant unemployable. *See Michael*, 334 S.W.3d at 663. Shea's evidence did not address any combination of the last injury with any pre-existing conditions. Based upon Shea's testimony, the Fund would have no liability whatsoever.

■ In further support of her argument that "it was error to find [England's] opinion more credible than Susan Shea's[,]" Claimant cites *Vickers v. Mo.*

*Dept. of Pub. Safety,* 283 S.W.3d 287, 295 (Mo.App.2009). Although Claimant fails to further clarify its relevance, portions of the opinion in *Vickers* are directed toward a resolution of "conflicting medical opinions" and a finding that an ALJ's credibility determinations were based on "erroneous information." *Id.* at 295. *Vickers* has no application here for two reasons. First, Claimant has not identified any information that England relied upon in giving his opinion that was erroneous. Second, *Vickers* addressed the resolution of conflicting testimony from *medical* experts related to medical causation, which is inapplicable here, because the issue under review relates to Claimant's employability, which is a vocational determination. "[T]he Commission's finding on a technical matter, such as the employability of an individual, ... is within the Commission's expertise." *Carkeek,* 352 S.W.3d at 610. Furthermore, both England and Shea provided their opinions regarding Claimant's employability without objection as to their admissibility, thus a determination of which opinion was more credible is for the Commission. *Hartle v. Ozark Cable Contracting,* 291 S.W.3d 814, 817 (Mo.App. 2009).

Claimant has failed to demonstrate that the Commission erred in any manner in crediting England's testimony over that of Shea's testimony. Claimant's first point is denied.

### Commission Considered Claimant's Pre-existing Psychological Disabilities

 In her second point relied on, Claimant alternatively contends that the Commission's rating of "permanent partial disability based upon a combination of 40%

from the July 15, 2000[,] accident and 15% pre-existing disability for a total of 22 weeks of disability" is not supported by competent and substantial evidence and is "against the overwhelming weight of the evidence and is clearly wrong because the evidence showed that [Claimant] had pre-existing psychological disabilities that the ALJ did not consider in his calculations." Claimant requests the case "be remanded for a recalculation of the Second Injury Fund liability with those disabilities considered."

On this point, Claimant argues, *in toto,* as follows:

> In the present case the ALJ and the Commission failed to address [Claimant's] pre-existing psychological disabilities as shown by both Dr. Pribar [sic] and Dr. Stillings. Using Dr. Pribor's rating, the disability was at least 10% of the body as a whole. Under Calvert ["v. SIF, No. 03:077312 (LIRC 12/8/2011) (Currently on Appeal to this Court SD31751),"][2] this should have been considered. These ratings are not contradicted anywhere in the records, and they must be included in the calculations. *See, Angus v. SIF,* 328 S.W.3d 294, 300–03 (Mo.App. W.D.2010).

Claimant's contention that Dr. Pribor's rating "should have been considered" ignores the Commission's finding that Claimant "had a 15% permanent partial disability of the body as a whole due to such pre-existing conditions[,]" which the Commission expressly "[b]ased on a consideration of all of the depression/anxiety/psychiatric evidence[.]" Furthermore, the Commission expressly found that Claimant did not meet her burden of proof on the issue of permanent total disability

---

**2.** This case cited by Claimant has not yet been decided, having been held in abeyance "during the pendency of WD74644 and ED97862[,] which were transferred to the Supreme Court[.]"

"[b]ased on a consideration of all of the evidence, pre-accident and post-accident, *psychiatric* or physical[.]" (Emphasis added).

Because the Claimant has failed to demonstrate or explain how the Commission's determination that Claimant had a pre-existing 15% permanent partial disability of the body as a whole did not consider and include Dr. Pribor's rating of 10% of the body as a whole for pre-existing psychological disabilities, Claimant's second point has no merit and is denied.

### Decision

The Commission's award allowing compensation is affirmed.

NANCY STEFFEN RAHMEYER and WILLIAM W. FRANCIS, JR., JJ., concur.