David PURSLEY, Appellant,

v.

CHRISTIAN HOSPITAL
NORTHEAST/NORTHWEST,
Employer,

and

Treasurer of Missouri as Custodian of Second Injury Fund, Respondent.

No. ED 96496.

Missouri Court of Appeals,
Eastern District,
Division Four.

Dec. 13, 2011.

Stephen C. Banton, Manchester, MO, for appellant.

Carol L. Barnard, Assistant Attorney General, St. Louis, MO, for respondent.

PATRICIA L. COHEN, Judge.

### Introduction

David Pursley (Claimant) appeals the final award of the Labor and Industrial Relations Commission (Commission) denying his claim against the Second Injury Fund (Fund) for permanent total disability (PTD) benefits. Claimant contends the Commission's finding that Claimant's PTD was the result of hepatitis C alone was contrary to the overwhelming weight of the evidence. We affirm.

### Factual and Procedural Background

Claimant began working for Christian Hospital Northeast (Employer) in November 1979 as an ambulance driver and EMT. In 1982, Claimant became a paramedic and, in 1992, Claimant moved to Employer's emergency room and began attending nursing school. Claimant became a registered nurse in 1994 and continued his career as an emergency room nurse.

In July 1998, Claimant was working for Employer as an emergency room nurse when he was exposed to and contracted hepatitis C. Due to the symptoms associated with the hepatitis C and its treatment, Claimant stopped working in November 1998. Employer terminated Claimant's employment in November 1999.

On April 28, 2000, Claimant filed a claim for workers' compensation against Employer and the Fund.[1] On October 31, 2007, Claimant filed an amended claim against the Fund, stating that he was permanently and totally disabled due to a combination of the effect of his 1998 occupational disease and preexisting injuries to his "mind (mental), asthma, hypertension." Claimant and Employer settled Claimant's workers' compensation claim, and an administrative law judge (ALJ) with the Division of Workers' Compensation approved the settlement on June 15, 2009.

On June 7, 2010, the ALJ held a hearing on Claimant's claim against the Fund. At the hearing, Claimant testified that in July 1998, he began experiencing night sweats, high fevers, weight loss, pallor, jaundiced eyes, and difficulty performing normal tasks. Claimant sought treatment and was diagnosed with hepatitis C approximately one month later. About two months after starting treatment for hepatitis C, Claimant began to suffer depression, fatigue, and insomnia. At that time, Claimant began seeing a psychiatrist.

---

1. In his initial claim, Claimant based his claim against the Fund upon a previous injury to his knee, which occurred in 1988.

Claimant found that the treatment for the hepatitis C worsened his symptoms, including his fatigue, confusion, insomnia, and physical weakness. Claimant stated that he stopped working in November 1998 because "it was the symptoms from the hepatitis that caught up to [him]." Claimant testified that, at the time of hearing, he continued to suffer depression, fatigue, difficulty sleeping, feelings of worthlessness and hopelessness, indecisiveness, disorientation, lack of focus, and suicidal thoughts.

Claimant testified that, prior to July 1998, he was able to work "full duty" as an emergency room nurse and had not suffered night sweats, fever, weight loss, and fatigue. In the years before his disease, Claimant worked twelve-hour shifts, rode his bicycle 35 to 70 miles per day, and regularly worked out at a gym. Claimant recalled that, prior to 1998, he suffered two episodes of depression, but they did not interfere with his ability to work. One such episode occurred in the late 1980's after a break-up with a girlfriend.

Timothy Lalk, a vocational rehabilitation counselor, also testified on behalf of Claimant. At Claimant's request, Mr. Lalk performed a vocational rehabilitation evaluation of Claimant on December 10, 2007. Mr. Lalk reviewed Claimant's medical records and interviewed Claimant about his family, employment, and medical history. Mr. Lalk concluded that Claimant "would not be able to return to any type of employment, specifically because of the psychiatric condition that he is currently suffering." On cross-examination, Mr. Lalk testified that, it was his understanding that Claimant's symptoms of fatigue, low energy, decreased appetite, poor memory, and difficulty sleeping were a result of the hepatitis C. Mr. Lalk further stated that Claimant told him "he was unable to work because of confusion, lack of willpower and

depression that [Claimant] attributed to the hep C because he has to take medications that make him depressed and confused." When counsel for the Fund asked, "So he is attributing his inability to work to the hep C. Is that fair?," Mr. Lalk answered, "Yes."

Mr. Lalk testified that Claimant told him about a "short-term period" of depression he experienced after his girlfriend left him in 1988. At that time, Claimant was "having concentration issues and anxiety which the doctor related to the stress of the relationship." Mr. Lalk did not believe that Claimant received any further psychiatric treatment until after he was diagnosed with hepatitis C in 1998. Mr. Lalk noted that Claimant's medical record indicate that he sought treatment for memory problems in 1979 and for memory problems and fatigue in 1990, which appeared to be related to depression and anxiety. Mr. Lalk opined that Claimant's memory problem was not permanent, but was "something that became intrusive due to some, something other than his actual cognitive abilities, such as periods of depression or periods of anxiety." Mr. Lalk stated that Claimant's pre–1998 problems with poor memory and fatigue did not affect his ability to learn new skills or perform his job. Mr. Lalk believed Claimant "had a psychiatric condition that he was able to function with, but this hepatitis C left him in a position where he was unable to work. . . ."

Claimant also introduced the medical reports of his treating physicians and mental healthcare providers, as well as the reports and deposition testimony of various experts, including Dr. Wayne Stillings, a psychiatrist. At Claimant's request, Dr. Stillings examined Claimant on March 8, 2008. Dr. Stillings reviewed Claimant's medical records, conducted a mental status examination, and administered the MMPI–2.

Dr. Stillings diagnosed Claimant with chronic, severe, major depressive disorder and schizoid personality traits and concluded that Claimant's "work injury and associated anti-viral treatment were substantial factors in the [sic] reactivating his major depressive order and causing it to become a chronic disorder." In Dr. Stillings' opinion, Claimant was permanently and totally disabled as a result of Claimant's preexisting schizoid personality traits and depressive disorder combined with the chronic major depressive disorder related to Claimant's 1998 occupational disease and the subsequent treatment.

Dr. Bruce Bacon, Claimant's treating physician and an expert in the treatment of hepatitis C, also testified by deposition. Dr. Bacon treated Claimant's hepatitis C from May 2003 through June 2007. Dr. Bacon testified that: Claimant contracted hepatitis C from a work-related exposure; Claimant's treatments did not result in a sustained virological response, meaning that he relapsed; and Claimant would require further treatment for his illness. Dr. Bacon testified that Claimant suffered symptoms typical of hepatitis C and its treatment, including: weight loss, poor appetite, difficulty sleeping, fatigue, irritability, flu-like symptoms, depression, and decreased energy. Dr. Bacon supported Claimant's belief that he was unable to work and he rated Claimant permanently and partially disabled based upon Claimant's liver disease and subjective complaints. When asked whether Claimant had any permanent partial disability from any prior injuries, Dr. Bacon indicated that he was unaware of any previous injuries and had only evaluated Claimant's liver disease.

The ALJ issued its findings of fact and rulings of law on September 8, 2010. In its award, the ALJ held that Claimant contracted an occupational disease in the course and scope of his employment and that Claimant was permanently and totally disabled. However, the ALJ found that Claimant was permanently and totally disabled as a result of the hepatitis C alone and, therefore, the Fund "has no liability for this disability."

On March 2, 2011, the Commission affirmed and adopted the ALJ's opinion denying Claimant's claim against the Fund. Claimant appeals.

### Standard of Review

Upon review of the Commission's final award, this court may modify, reverse, remand for rehearing, or set aside the award only if the Commission acted without or in excess of its powers, the award was procured by fraud, the facts found by the Commission do not support the award, or there was not sufficient competent evidence in the record to warrant the making of the award. Mo.Rev.Stat. § 287.495. We examine the whole record to determine whether it contains sufficient competent and substantial evidence to support the award, and only in the rare case will we find an award to be against the overwhelming weight of the evidence. *Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220, 222–23 (Mo. banc 2003).

### Discussion

In his sole point on appeal, Claimant asserts that the Commission's finding that Claimant's PTD resulted from his hepatitis C alone is contrary to the overwhelming weight of the evidence and "in flagrant defiance of the uncontroverted medical testimony concerning clinical depression." Claimant further maintains that the Commission improperly "reached [its] own conclusion regarding medical causation without the support of any expert medical testimony."

■ The Second Injury Fund compensates workers who are permanently and totally disabled by a combination of past disabilities and a primary work injury. *Concepcion v. Lear Corp.*, 173 S.W.3d 368, 371 (Mo.App. W.D.2005). Under Section 287.220, the Fund is liable for that portion of a claimant's disability that is attributable to the preexisting condition. Mo.Rev.Stat. § 287.220; *Angus v. Second Injury Fund*, 328 S.W.3d 294, 304 (Mo. App. W.D.2010). To establish the Fund's liability, a claimant must establish either: "that the preexisting partial disability combined with a disability from a subsequent injury to create a permanent and total disability, or the two disabilities combined result in a greater disability than that which would have occurred from the last injury alone." *Highley v. Von Weise Gear*, 247 S.W.3d 52, 55 (Mo.App. E.D.2008)

■ When assessing Fund liability, the Commission must first determine the degree of disability from the last injury alone. *Ball–Sawyers v. Blue Springs Sch. Dist.*, 286 S.W.3d 247, 254 (Mo.App. W.D. 2009). "Preexisting disabilities are not relevant until this determination is made." *Id.* Accordingly, if the hepatitis C alone rendered Claimant permanently and totally disabled, then the Fund has no liability.

Here, the Commission considered the effects of Claimant's last injury, namely the hepatitis C, and found that the hepatitis C alone resulted in Claimant's permanent and total disability. The Commission based its conclusion, in large part, on "Claimant's own credible description of his continued problems and complaints that he relates to the 1998 hepatitis C occupation-al exposure injury."[2] At the hearing, Claimant testified that, as a result of the hepatitis C and its attendant treatment, he suffered depression, difficulty sleeping, fatigue, poor focus, indecisiveness, and feelings of worthlessness and hopelessness. Claimant specifically stated that he stopped working in November 1998 because of the symptoms he was experiencing associated with his hepatitis C. Likewise, Claimant told Mr. Lalk that "the primary reason that he is unable to work at this time is due to his confusion, lack of willpower and depression," which he attributed to the hepatitis C and the medications he took for the disease. Based on Claimant's "credible testimony," the Commission found that the "effects of the hepatitis C and the treatment he received for that virus have left Claimant physically and mentally unable to engage in any type of employment activity on a full-time or even part-time basis because of the profound fatigue, depression and concentration issues."

The medical reports of various doctors and the reports and testimony of Dr. Bacon supported the Commission's determination that Claimant's hepatitis C rendered him permanently and totally disabled. For example, Dr. Anthony Mattaline, Claimant's primary care physician, noted that the medications Claimant was taking for his hepatitis caused Claimant to experience confusion, poor concentration, and insomnia, and he restricted Claimant to working no more than four hours per day. Dr. Bacon opined that Claimant's ability or inability to work was dependent on the extent of his symptoms from his active virus. Dr.

2. On appeal, Claimant argues that the Commission erred because it "based its medical findings on lay testimony." However, "[t]he testimony of the claimant or other lay witnesses as to facts within the realm of lay understanding can constitute substantial evidence of the nature, cause, and extent of the disability, especially when taken in connection with, or where supported by, some medical evidence." *ABB Power T & D Co. v. Kempker*, 236 S.W.3d 43, 51 (Mo.App. W.D. 2007) (emphasis omitted).

Bacon supported Claimant's belief that Claimant was not able to work because of his fatigue, depression, poor memory, and difficulty sleeping. Similarly, Dr. Jeffrey Crippin, an independent medical examiner for Employer, believed that Claimant's severe fatigue and ongoing depression would make it difficult for Claimant to work. We conclude that the testimony of Dr. Bacon and Claimant and the medical reports of Drs. Mattaline and Crippin, constituted competent and substantial evidence upon which the Commission could rely in concluding that Claimant was PTD as a result of the hepatitis C.

■ Claimant argues, however, that the Commission improperly disregarded uncontroverted medical testimony that Claimant's disability was a result of his preexisting clinical depression and the hepatitis C. More specifically, Claimant contends that Dr. Stillings' medical opinion, which supported Claimant's claim that the combination of his preexisting depressive disorder and the hepatitis C rendered him PTD, was effectively uncontroverted because Dr. Bacon failed to take into account Claimant's preexisting condition when he attributed Claimant's disability to the hepatitis C alone.[3]

■ "The evaluation of medical testimony concerning a claimant's disability is within the peculiar expertise of the Commission, and, as such, the Commission is free to disbelieve the testimony of the claimant's medical expert." *Tombaugh v. Treasurer of State*, 347 S.W.3d 670, 675 (Mo.App. W.D.2011). "However, the [C]ommission may not substitute an administrative law judge's personal opinion on the question of medical causation of an injury for the uncontradicted testimony of a qualified medical expert." *Angus*, 328 S.W.3d at 300, *quoting Wright v. Sports Associated, Inc.*, 887 S.W.2d 596, 600 (Mo. banc 1994).

Contrary to Claimant's argument on appeal, Dr. Stillings' medical testimony was contradicted by competent medical testimony. As previously stated, Dr. Bacon attributed Claimant's permanent disability to the hepatitis C. The Commission considered the fact that Dr. Bacon was unaware of Claimant's prior depressive episodes and found that it supported the finding that Claimant's hepatitis C caused his PTD. The Commission also found that Dr. Bacon, as one of Claimant's primary treating physicians and an expert in the treatment of hepatitis C, was "most especially in the best position to render competent, credible and reliable opinions, not only on Claimant's diagnosis and condition, but also on his ability to work or not as a result of the effects of the hepatitis C." We defer to the Commission's assessment of witness credibility and the weight given to the testimony. *Hager v. Syberg's Westport*, 304 S.W.3d 771, 773 (Mo.App. E.D. 2010).

---

**3.** Claimant similarly argues that Mr. Lalk's expert testimony was uncontroverted and improperly disregarded by the Commission. Like Dr. Stillings, Mr. Lalk testified that Claimant's preexisting depression combined with the hepatitis C to cause Claimant's PTD. However, Mr. Lalk stated in his deposition that he relied "in a large part on Dr. Stillings' assessment" when he reached this conclusion. The Commission stated: "[T]o the extent that [Mr. Lalk] relies on Dr. Stillings' unfounded and incredible opinion on pre-existing psychiatric permanent partial disability ... the part of his opinion on the combination of disabilities, therefore, lacks probative value and cannot be used as a basis for an award of compensation in this case." In the interest of simplicity and because Mr. Lalk's opinion was based on that of Dr. Stillings, we focus our analysis on the Commission's consideration of Dr. Stillings' medical testimony.

Furthermore, the Commission did not disregard Dr. Stillings' medical opinion. Rather, the Commission found that Dr. Stillings' opinion that Claimant was permanently and totally disabled as a result of the preexisting clinical depression combined with the hepatitis C was "not ... particularly probative, credible or reliable." Specifically, the Commission took issue with Dr. Stillings' finding that Claimant had prior schizoid personality traits, which Dr. Stillings based on his belief that Claimant had a "variable work history" and "bounc[ed] around" between careers and positions. Given that Dr. Stillings' opinion that Claimant suffered a pre-existing permanent partial psychiatric disability was based on an inaccurate interpretation of Claimant's work history, the Commission found "his opinions on pre-existing psychiatric disability to be completely without merit or basis, and, thus, not competent, credible or reliable." [4] It is clear that the Commission weighed Dr. Stillings' credibility and found him not as credible as Dr. Bacon. The Commission was therefore free to reject Dr. Stillings' testimony. *See e.g., Copeland v. Thurman Stout, Inc.,* 204 S.W.3d 737, 744 (Mo.App. S.D.2006).

 Finally, we note that, even if Claimant were able to prove that the Commission erred in finding that his PTD resulted from the occupational disease alone, Claimant cannot establish Fund liability. To trigger Fund liability, Claimant was required to demonstrate that his preexisting disability "represented an obstacle or hindrance to his ability to work." *Second Injury Fund v. Steck,* 341 S.W.3d 869, 873 (Mo.App. W.D.2011) (quotation omitted). In his brief, Claimant acknowledges that,

prior to contracting hepatitis C, Claimant's clinical depression was not an obstacle or hindrance to his ability to work: "The simple fact is that, when he was employed in 1998, [Claimant] was able to perform his duties." Point denied.

### Conclusion

The Commission's award is affirmed.

KURT S. ODENWALD, C.J., and ROBERT M. CLAYTON III, J., concur.

---

4. Claimant challenges the Commission's credibility determination as to Dr. Stillings, by pointing out that Commission "seems to accept Dr. Stillings' opinion that [Claimant] is permanently and totally disabled, but then disavows his opinion concerning the combi-

nation of the disabilities." We note that Commission, as the finder of fact, "may reject all or part of an expert's testimony." *Russell v. Invensys Cooking & Refrigeration,* 174 S.W.3d 15, 23 (Mo.App. S.D.2005).