Shawn CLASPILL, Appellant,

v.

**FED EX FREIGHT EAST, INC., Respondent,**

and

**Treasurer of the State of Missouri as Custodian of the Second Injury Fund, Respondent.**

No. SD 31346.

Missouri Court of Appeals, Southern District, Division One.

Jan. 25, 2012.

Motion for Rehearing or Transfer Denied Feb. 16, 2012.

Application for Transfer Denied April 3, 2012.

Jennifer L. Newman, Newman Law Firm, Springfield, for Appellant.

Constance M. Warner, St. Louis, for Respondent, Fed Ex Freight.

Chris Koster, Atty. Gen., Columbia, Cara Lee Harris, Asst. Atty. Gen., Springfield, for Respondent, Second Injury Fund.

ROBERT S. BARNEY, Judge.

Appellant Shawn Claspill ("Claimant") appeals from the Labor and Industrial Relations Commission's ("the Commission") "Final Award Allowing Compensation (Affirming Award and Decision of Administrative Law Judge ["ALJ"])" which awarded Claimant 10 percent permanent partial disability of the body as a whole attributable to Employer and found no liability on the part of the Treasurer of the State of Missouri as Custodian for the Second Injury Fund ("the Fund"). In his sole point relied on Claimant maintains the Commission erred in finding Claimant "was not permanently totally disabled against the [Fund] as a result of the work injuries sustained on July 28, 2006[,] in combination with his pre-existing physical conditions...."[1] We affirm the decision of the Commission.

Section 287.495.1 provides the standard of review for a workers' compensation case.[2] It sets out in relevant part:

[t]he court, on appeal, shall review only questions of law and may modify, reverse, remand for rehearing, or set aside the award upon any of the following grounds and no other:

(1) That the [C]ommission acted without or in excess of its powers;

(2) That the award was procured by fraud;

(3) That the facts found by the [C]ommission do not support the award;

(4) That there was not sufficient competent evidence in the record to warrant the making of the award.

§ 287.495.1; *see Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220, 222 (Mo. banc 2003).[3] "A court must examine the whole record to determine if it contains sufficient competent and substantial evidence to support the award...." *Id.* at 222–23. "'[T]he Commission, as the finder of fact, is free to believe or disbelieve any evidence,' and this [C]ourt is bound by the Commission's factual determinations." *Clark v. Harts Auto Repair*, 274 S.W.3d 612, 617 (Mo.App.2009) (quoting *ABB Power T & D Co. v. Kempker*, 236 S.W.3d

---

1. The claim underlying the present matter was consolidated by the Commission with at least one other pending claim against Employer for injuries Claimant apparently suffered in August of 2005 to his ankles. There is no information in the legal file about these earlier possible claims and what we have gathered from the transcript about these issues is discussed in the facts set out below.

2. Unless otherwise stated, all statutory references are to RSMo 2000.

3. We note several cases overruled by *Hampton* are cited in this opinion in support of other principles of law not affected by the *Hampton* ruling. *Hampton*, 121 S.W.3d at 224–32. No further acknowledgment of *Hampton*'s effect on those cases needs to be recited hereafter.

43, 49 (Mo.App.2007)). "The Commission is the sole judge of the credibility of witnesses and the weight and value to give to the evidence.'" *Clayton v. Langco Tool & Plastics, Inc.*, 221 S.W.3d 490, 493 (Mo. App.2007) (quoting *Blackwell v. Puritan–Bennett Corp.*, 901 S.W.2d 81, 85 (Mo.App. 1995)). Typically, this Court reviews the findings of the Commission; however, "[i]f the Commission incorporates the [ALJ's] opinion and decision, the reviewing court will consider the Commission's decisions as including those of the [ALJ]." *Copeland v. Thurman Stout, Inc.*, 204 S.W.3d 737, 740 (Mo.App.2006). "The Commission's interpretation and application of the law ... are not binding on this [C]ourt and fall within our realm of independent review and correction." *Bowers v. Hiland Dairy Co.*, 132 S.W.3d 260, 263 (Mo.App.2004).

 "Section 287.220.1 sets out the law governing when the second injury fund is liable." *Pierson v. Treas. of Missouri*, 126 S.W.3d 386, 388 (Mo. banc 2004).

> It provides for fund liability if the preexisting disability and the combined effect of it and the new injury are each of such seriousness that they are a hindrance or obstacle to employment and 'if a body as a whole injury, equals a minimum of fifty weeks of compensation or, if a major extremity injury only, equals a minimum of fifteen percent permanent partial disability.'

*Id.* at 388–89 (quoting § 287.220.1). "Where the statute applies, the employer is liable only for the amount of disability caused by the current injury, and the [F]und is liable in the amount of the increase in disability caused by the synergistic effect of the two injuries." *Id.*

 "The type of benefits that [C]laimant is entitled to recover from [the Fund] depends on the resulting combination of [C]laimant's last injury and preexisting permanent partial disabilities."

*Dunn v. Treas. of Mo., Second Injury Fund*, 272 S.W.3d 267, 272 (Mo.App.2008). "In order for a claimant to be entitled to recover permanent partial disability benefits from the [Fund], he must prove that the last injury, combined with his pre-existing permanent partial disabilities, cause[d] greater overall disability than the independent sum of the disabilities." *Id.* Additionally, "in order for the claimant to be entitled to recover permanent total disability benefits from the [Fund], he must prove that the last injury, combined with his pre-existing permanent partial disabilities, result[ed] in permanent total disability." *Id.* "For this reason, 'pre-existing disabilities are irrelevant until the employer's liability for the last injury is determined.'" *Birdsong v. Waste Mgmt.*, 147 S.W.3d 132, 138 (Mo.App.2004) (quoting *Landman v. Ice Cream Specialties, Inc.*, 107 S.W.3d 240, 248 (Mo. banc 2003)). "If the [claimant's] last injury in and of itself rendered [him] permanently and totally disabled, the Fund has no liability; the employer is responsible for the entire amount of compensation." *Id.* "The testimony of a claimant or other lay witness can constitute substantial evidence of the nature, cause, and extent of disability when the facts fall within the realm of lay understanding." *Silman v. William Montgomery & Assoc.*, 891 S.W.2d 173, 175 (Mo.App.1995); *see also Kuykendall v. Gates Rubber Co.*, 207 S.W.3d 694, 711 (Mo.App.2006). However,

> [w]here the condition presented is a sophisticated injury that requires surgical intervention or other highly scientific technique for diagnosis ... the proof of causation is not within the realm of lay understanding nor—in the absence of expert opinion—is the finding of causation within the competency of the administrative tribunal.

*Silman*, 891 S.W.2d at 175–76.

The record reveals that on or about July 28, 2006, Employee was injured while in

the course and scope of his employment with Fed Ex Freight East, Inc. ("Employer"). Claimant, who was employed as a mechanic, claims he fell from a forklift on that date injuring his lower back and right hip. Several other employees came to his aid, but Claimant did not seek immediate medical treatment nor did he immediately report the injury to his supervisor or miss work due to the injury. Claimant saw his family physician, Dr. Kyle Smith ("Dr. Smith"), on August 2, 2006, due to ongoing pain in his ankles. Dr. Smith's records do not record any mention of back pain at that time. The following week Claimant reported the incident to his supervisor and an incident report was filled out. Several days later, on August 7, 2006, Claimant was treated at the emergency room of St. John's Regional Health Center for a headache, back pain and neck discomfort. Again, the records from this visit do not indicate he informed the treating physician about the fall from the forklift that occurred several weeks prior, that he complained about pain in his back or that he was there due to a work-related injury. Several tests were performed on Claimant at that time as it was believed his symptoms were indicative of meningitis; however, meningitis was ruled out and Claimant was discharged with a prescription for painkillers.

Claimant followed up with Dr. Smith on August 9, 2006.[4] Again, Claimant did not inform Dr. Smith about his fall from the forklift. Instead, he reported the symptoms that caused him to go to the emergency room and informed Dr. Smith that he "feels like it is pretty much back to normal." Employer then sent Claimant to Concentra Medical Centers on August 11, 2006. The medical records from that visit stated:

> [Claimant] fell at work on 7/28 and went to St. Johns ER on 8/7 for evaluation of low back/buttock and headache including negative CT of head. His symptoms have resolved on the prescribed [medications]. He admits some residual discomfort in the right low back and buttock where initial bruising has resolved. The pain did not radiate.

Dr. Jasper Wakeman ("Dr. Wakeman") concluded Claimant had suffered a "contusion of the buttocks" and he was released to return to work without any restrictions or limitations.

On August 26, 2006, Claimant saw Dr. Smith for pain in his ankles and, again, there was no mention on his part of his fall or any back pain.[5] In fact, there is no

4. Dr. Smith's records reveal Claimant had a history of lower back pain and, in fact, had a prescription for pain medicine for his back issues at the time of his fall. It appears that Claimant was prescribed Xanax for anxiety and pain in February of 2003; that in May of 2004 Dr. Smith expressed concern that Claimant was physically dependent on the painkiller Oxycodone; in December of 2004 Dr. Smith noted Claimant was "having a little more low back pain and knee pain ... wants to take Hydrocodone just on an intermittent basis;" in March of 2005 Claimant was diagnosed with "left-sided low back pain" after reporting to Dr. Smith that he had low back pain after stepping out of a truck; Dr. Smith's notes indicate that as of May of 2005 Claim-

ant was taking three to four Hydrocodone pills a day for back and knee pain as well as an anti–inflammatory; and Dr. Smith's notes from August of 2005 state that Claimant has a "history of chronic low back and knee pain." Dr. Smith's records also characterize Claimant as being "irritable" well before the work-related accident at issue and note that Claimant was also on medication for anxiety and depression prior to the fall.

5. Claimant filed for both short term and long term disability in November of 2006 and reflected on the forms that his condition was work-related. However, on the same forms Dr. Smith indicated Claimant's medical problems were not work-related.

mention of back pain in Claimant's medical records until January of 2007 when Claimant returned to Dr. Smith and reported increasing low back pain over the preceding weeks with the pain radiating into his tailbone. An MRI was performed the following day and it revealed a disc protrusion at the L5–S1 level and impingement on the L–5 nerve as well as disc extrusion and material present at the L3–L4 level.

Claimant was referred by Dr. Smith to Dr. Charles Mace ("Dr. Mace") at Springfield Neurological and Spine Institute. Claimant saw Dr. Mace on January 31, 2007. Claimant informed Dr. Mace of his fall from the forklift and reported constant low back pain extending into his hips. Dr. Mace diagnosed him as suffering from pain in his hip, low back and buttocks with a L3–L4 disc protrusion and Claimant was given a steroid injection which provided temporary relief. Claimant later received a second steroid injection, this time from Dr. Wakeman, although the second shot provided little relief.

Claimant filed his "CLAIM FOR COMPENSATION" on March 2, 2007. Both the Fund and Employer filed "Answers" to Claimant's claim. Claimant then amended his claim for compensation on April 26, 2007, and it was answered by both the Fund and Employer. A hearing was then held before the ALJ on May 17, 2010.

Dr. Shane Bennoch ("Dr. Bennoch") testified via deposition for Claimant that he evaluated Claimant on May 22, 2006, and February 28, 2008.[6] He stated Claimant reported he had ankle pain as the result of his employment and an incident in Employer's parking lot in which he twisted his ankle. Claimant also admitted to Dr. Bennoch that "he had a prior history of bilateral ankle injuries in high school" and pain

thereafter. Claimant stated he saw several doctors for his ankle issues and had received a number of injections but the "chronic arthritis" in his ankles was not very responsive to the injections. Additionally, Claimant reported to Dr. Bennoch that he suffered from sleep apnea; esophageal reflux; high blood pressure; and had previous surgery for carpal tunnel syndrome. After a physical examination Dr. Bennoch found Claimant had ligament injuries, "bilateral ankle pain with osteoarthritis of the subtalar joints;" and "tenosynovitis to some of the tendons in the ankle area." Dr. Bennoch concluded that as of May of 2006 Claimant had reached maximum medical improvement on his ankle issues. Dr. Bennoch also concluded Claimant had "a 25 percent impairment to the right ... ankle ...;" a "20 percent permanent partial impairment of the left ..." ankle; and that "a quarter of the 25 percent and a quarter of the 20 percent would be from preexisting" injuries. As for the preexisting injuries, he assigned "20 percent for his sleep apnea;" "[f]ive percent for his hypertension;" "[f]ive percent for the umbilical hernia ...;" "25 percent because of the right carpal tunnel surgery;" and "25 percent [for] the left carpal tunnel surgery." He related that each of these injuries "combined created a greater impairment than each separate one." He stated Claimant might eventually need additional medical intervention in dealing with these injuries including fusion of his ankles.

Turning to the injury Claimant suffered in the fall from the forklift, Dr. Bennoch stated Claimant "has been confined to his home, and he's not able to do much of anything, he used to hunt, fish, can't do it

---

**6.** The February examination by Dr. Bennoch occurred directly after Claimant suffered a non-occupational fall at his mother's home.

anymore, et cetera." He stated Claimant was depressed and taking several medications for that. He also testified Claimant was "quite" overweight, had been advised that weight loss would help his back and ankle problems, and had been prescribed Phentermine to aid in weight loss. Dr. Bennoch noted Claimant was also on Morphine and Oxycodone for his back as well as medicine for his high blood pressure. Following a physical examination of Claimant, Dr. Bennoch agreed with the earlier diagnosis of disc bulges and nerve impingement in the L3–L5 areas of the spine. Dr. Bennoch concluded that Claimant's back injury from falling off the forklift in July of 2006 was the prevailing cause of his low back injuries and other physical impairments. He related it was his opinion that Claimant had reached maximum medical improvement for his lower back injuries as of February of 2008 and he rated Claimant at "a 30 percent permanent impairment rating." He also noted Claimant would need additional treatment for his back in the future and could not return to a job "requiring the kind of foot and ankle activity he has as a mechanic." He also set out that Claimant would be restricted to standing and walking less than two hours in an eight hour work day; was subject to lifting and reaching restrictions; and must alternate sitting and standing to relieve pain and discomfort. Dr. Bennoch ultimately concluded that based on Claimant's full medical history and ongoing issues he "will need to be considered for permanent and total disability since he now has a combination of bilateral ankles with severe pain, persistent low back pain

with left radiculopathy and symptoms post carpal tunnel release bilaterally."

Wilbur Swearingin ("Mr. Swearingin"), a certified rehabilitation counselor, testified via deposition for Claimant that he evaluated Claimant's medical records and performed some physical tests on Claimant on July 2, 2008. Mr. Swearingin concluded that prior to the fall from the forklift in July of 2006, Claimant's previous issues such as his ankle pain, his narcotic pain medicine dependency, his sleep apnea and his carpal tunnel syndrome caused him to be vocationally disabled as they combined to be a hindrance to employment. As such, following his July of 2006 back injury, which caused Claimant even more discomfort and pain as well as placed a large number of restrictions on his activities, Mr. Swearingin concluded Claimant was not employable in the open labor market and was permanently and totally disabled as a combination of his July of 2006 fall and his pre-existing impairments.

At the hearing, Claimant detailed the incident in which he fell from the forklift and struck his right hip or buttock on the frame of the truck.[7] He stated that "[e]verything popped ... from the bottom of [his] back to the top" and related that his "back snapped" in the fall. He stated his coworkers heard him "hollering" and asked him if he needed them to call an ambulance. Despite his report that he was "stunned" by the fall, Claimant completed his shift and went home without seeking medical attention because he "didn't think [he] was hurt at the time."[8] He testified his back starting hurting after

7. At his deposition Claimant testified that he had fallen from a forklift and landed on top of a truck on his "right rear...." Claimant's records from Concentra likewise show that he reported falling from a forklift and landing on his right hip "on the back of the frame of a truck." However, Claimant's Wife testified at the hearing that Claimant reported to her that

"he could have almost died ... fell to the floor."

8. Further, at his deposition Claimant testified he did not seek medical attention for his back injury because he "[d]idn't feel like [he] was hurt."

the fall and he only worked for Employer until December of 2006 due to his back pain.[9] He related that he has been unemployed since that time due to his need to take narcotic pain medication and the back injury has changed his personal life as well in that he cannot do the things he once did with his family.[10] He stated he had an ongoing sharp pain in the lower left side of his back; tingling and numbness down both of his legs; pain in both his ankles; pain in both of his hands; and discomfort in his abdomen from a prior hernia surgery.

Employer presented the deposition testimony and evaluation report of Dr. Norbert Belz ("Dr. Belz"), a specialist in "occupational and environmental medicine." Dr. Belz testified that he reviewed Claimant's medical records and evaluated him physically prior to assigning Claimant the following ratings: a pre-existing disability of ten to twelve and a half percent of the right wrist due to carpal tunnel syndrome; a pre-existing disability of ten to twelve and a half percent of the left wrist due to carpal tunnel syndrome; and a combined disability of the bilateral wrists "in excess of simple sum such that a ten percent ... load is appropriate." As for Claimant's "[p]rior symptomatic bilateral ankle degenerative joint disease," Dr. Belz found him to have a fifteen to twenty percent permanent partial disability to the left ankle/foot; a ten to twelve in a half percent permanent partial disability to the right ankle/foot; and bilateral ankle and foot disabilities that combined "in excess of simple sum such that a ten percent ... load is appropriate." As for Claimant's prior back pain, Dr. Belz assigned a five

percent permanent partial disability to the body as a whole. Dr. Belz found Claimant had no permanent partial disability relating to any of his claims for work-related injuries including the fall from the forklift in 2006. He found Claimant reached maximum medical improvement from his fall on April 10, 2007, although he continued to have "subsequent non-occupational flare[s] of degenerative joint disease and degenerative disc disease." Dr. Belz found that Claimant's low back disabilities combined resulted in a finding that a ten percent load is appropriate. Dr. Belz noted Claimant's disabilities were certainly an impediment to his functioning, but he noted that the greatest impediment was Claimant's "morbid obesity" and smoking.

Dr. Belz also noted in his report and in his testimony that there were discrepancies in Claimant's version of his medical history and in the medical records he reviewed. He related that nothing in the medical records, the reports of other doctors or in his own physical evaluation supports Claimant's story that he suddenly developed ankle pain in 2005 and that he suddenly developed low back pain after the fall from the forklift. He noted that Claimant's history of ankle issues dates back in his medical records to 2000, and that it was his belief that Claimant suffered from degenerative arthritis in the ankles that was unrelated to his work for Employer as a mechanic. Dr. Belz also pointed out that none of the doctors who treated Claimant following the fall found neurological damage, noted no bruising or other injuries, and were not even told about the fall by Claimant despite Claim-

---

**9.** Claimant also testified at his deposition on August 16, 2006, in relation to his claim for compensation due to ankle injuries, that he did not need further medical treatment for his back and remarked he was not having any back problems related to the fall at that time.

**10.** Several members of Claimant's immediate family also testified that Claimant is often in bed instead of at family functions; that Claimant no longer engages in family activities and outings; and that Claimant is often angry or depressed.

ant's history of back issues. Dr. Belz opined that Claimant's symptoms and response to the fall in July of 2006 was "not at all consistent with an occupational injury." As far as future medical treatment needed by Claimant, Dr. Belz felt that Claimant's issues could be controlled with non-narcotic pain medication and other noninvasive therapies. Dr. Belz concluded "within a reasonable degree of medical certainty" that there was no causal relationship between Claimant's work for Employer and his ankle and low back problems.

Employer also offered the deposition testimony of Robert Hosutt ("Mr. Hosutt"), a vocational rehabilitation counselor. Mr. Hosutt pointed out that a review of Claimant's medical records revealed ankle problems dating back to when he played high school basketball; that he suffered from a "progression of medical conditions;" that Claimant had restrictions placed on his work at various times by physicians; and that there was nothing in the records prior to his exam by Dr. Bennoch in 2008 which mentioned anything about permanent limitations. Mr. Hosutt testified that in addition to reviewing his medical records, he performed several vocational tests on Claimant. Noting discrepancies in Claimant's medical records and physical impairments, Mr. Hosutt concluded Claimant could "perform work at least at the light level of physical activity," that he had many transferable skills, and that he could find a position in the open labor market.

At the close of the evidence, the ALJ concluded that an "accident occurred when [Claimant] fell from a forklift and struck his right hip and back" and that he provided sufficient notice of the accident to Employer. The ALJ also found:

> Claimant testified that he did not recall his ankles hurting before going to work for [Employer]. He also said that he had no back problems either.... Claimant also testified that he did not recall taking any pain medication before the fall.... A review of the medical records show that contrary to his testimony, [C]laimant has, in fact, had a long history of ankle and back pain as well as anxiety and depression.
>
> ....
>
> Claimant denied pre-existing back problems at the hearing. The records are clear that he had pre-existing back complaints and, indeed, received treatment since at least 2003. He was, in fact, on narcotic pain medication for both back complaints and ankle complaints at the time of the fall.
>
> Dr. Belz testified that [Claimant] sustained a contusion injury when he struck his right hip on the forklift and fell on his back. In his opinion this condition had resolved as of the August 11th visit to Concentra. This conclusion is supported by the medical records from Concentra. I find that he was at maximum medical improvement for the contusion injury he sustained as of August 11, 2006.
>
> I find, based on the medical records and Dr. Belz' testimony, that [Claimant] sustained a contusion-type injury to his back. The fall was not a prevailing factor in causing [Claimant's] current pain and condition for which he has been and is currently being treated.

The ALJ further found Employer was not liable for any additional past or future medical treatment for Claimant and that Claimant was not due any temporary total benefits. The ALJ then concluded Claimant "has sustained a permanent partial disability of 10 percent of the body as a whole as a result of the contusion injury he sustained on July 31, 2006. Any additional disability he has as a result of any further

back condition is not [work-related]." It then found the Fund was "not liable for either permanent total disability or enhanced permanent partial disability." This decision was appealed to the Commission by Claimant and the Commission affirmed the decision of the ALJ. This appeal by Claimant followed.

■ In his sole point relied on Claimant asserts the Commission erred in affirming the ALJ's award, which concluded he was not permanently and totally disabled, because "as a matter of law [Claimant] was permanently and totally disabled as a result of his work injury of July 28, 2006[,] and [Claimant's] prior physical conditions."

Section 287.020.3(1), RSMo Cum.Supp. 2008, states that "[a]n injury by accident is compensable only if the accident was the prevailing factor in causing both the resulting medical condition and disability. The prevailing factor' is defined to be the primary factor, in relation to any other factor, causing both the resulting medical condition and disability." An injury is only compensable if it is clearly work-related. § 287.020.2, RSMo Cum.Supp. 2008. "An injury is not compensable merely because work was a triggering or precipitating factor." *Id.* Claimant's employment must be a substantial factor in causing the injury. § 287.020.3(2)(a), RSMo Cum.Supp.2008.

■ "To be entitled to workers' compensation benefits, the employee has the burden of proving that his or her injury was caused by a work-related accident." *Spencer v. Sac Osage Elec. Co-op., Inc.,* 302 S.W.3d 792, 800 (Mo.App.2010). "Where the right to compensation depends upon which of two conflicting medical theories should be accepted, the issue is peculiarly for the Commission's determination.' " *Id.* (quoting *Williams v. DePaul Health Ctr.,* 996 S.W.2d 619, 631 (Mo.App. 1999)). "Determinations with regard to

causation and work-relatedness are questions of fact to be ruled upon by the Commission, and the reviewing court may not substitute its judgment on the weight of the evidence or on the credibility of witnesses for that of the Commission." *Id.* (quoting *Bloss v. Plastic Enters.,* 32 S.W.3d 666, 671 (Mo.App.2000)).

Here, the Commission's detailed findings show it considered the testimony of all of the witnesses as well as all of the medical expert evidence presented in the depositions of Drs. Belz and Bennoch and in Claimant's medical records. The Commission pointed out numerous contradictions in the testimony and history presented by Claimant and the medical records introduced into evidence. Despite the fact that Claimant's medical records showed ankle issues dating back to before 2000, and back issues dating back to at least 2004, Claimant testified his ankles and back were both normal and fine prior to his purported work-related injuries in 2005 and 2006 respectively. The Commission also pointed out that Claimant went to the doctor on three occasions immediately following the fall from the forklift for other issues but failed to mention to those doctors the fall from the forklift or any ill effects arising therefrom. Even his personal physician noted on August 9, 2006, that Claimant reported he was pretty much back to normal and reported no lingering effects from any work-related accidents or injuries. In fact, it was not until January 31, 2007, that Claimant's medical records reflect any information about the fall from the forklift that occurred some seven months prior. Additionally, the testimony of Claimant and his immediate family that prior to the fall Claimant was incredibly happy and physically capable is called into question by the medical records that report his long struggle with morbid obesity, his history of use and possible

abuse of narcotic pain medicine, his history of chronic back and ankle pain, and his emotional and mental issues relating to anxiety, depression, and irritability. Factual determinations are the province of the Commission and it determines the weight of both lay and expert medical testimony. *Spencer,* 302 S.W.3d at 800. Despite Claimant's testimony to the contrary, the Commission had ample substantial and competent evidence upon which to base its finding that Claimant's ankle problems and injuries from the fall off of the forklift justified an award to Claimant from Employer of 10 percent permanent partial disability of the body as whole but that Claimant was not entitled to an award of permanent and total disability as against the Fund. Point denied.

The Award of the Commission is affirmed.

BATES, J. and FRANCIS, P.J., CONCUR.