

# Missouri Court of Appeals

## Southern District

### Division Two

JONATHAN SAGE,                                )
                                             )
    Claimant-Respondent/Cross-Appellant,    )
                                             )
v.                                           )
                                             )
TALBOT INDUSTRIES,                           )
                                             )
    Employer-Appellant/Cross-Respondent,    )
                                             )   Nos.   SD32901, SD32906,
and FIDELITY & GUARANTY INSURANCE            )          & SD32907
COMPANY,                                     )   Filed:  4-25-14
                                             )
    Insurer-Appellant/Cross-Respondent,     )
                                             )
and TREASURER OF THE STATE OF                )
MISSOURI AS CUSTODIAN OF THE SECOND          )
INJURY FUND,                                 )
                                             )
    Respondent-Respondent.                  )

### APPEAL FROM THE LABOR AND INDUSTRIAL RELATIONS COMMISSION

### <u>AFFIRMED</u>

This is a consolidated appeal involving two workers' compensation claims arising from work-related accidents occurring in 2004 and 2005. The Labor and Industrial Relations Commission (Commission) determined that the 2004 accident caused Jonathan Sage (Claimant) to be permanently and totally disabled. Claimant's employer, Talbot Industries (Employer), was ordered to pay Claimant benefits for, *inter alia*, permanent

and total disability, past medical expenses, mileage reimbursement and past temporary total disability. Because the Commission found that Claimant was permanently and totally disabled from the 2004 work injury alone, no liability was assessed against the Second Injury Fund (Fund). Employer and Fidelity & Guaranty Insurance Company (Appellants) present five points for decision. Appellants argue that:

(1) the Commission's finding that Claimant is permanently and totally disabled is not supported by competent and substantial evidence;

(2) the Commission erred by not finding that Claimant was permanently and totally disabled from the combination of the 2004 and 2005 accidents;

(3) the Commission erred by holding Employer responsible for Claimant's past medical expenses;

(4) the Commission erred by holding Employer responsible for Claimant's mileage; and

(5) the Commission erred by holding Employer responsible for Claimant's past temporary total disability benefits.

Finding no merit in any of these contentions, we affirm.[1]

## Factual and Procedural Background

Claimant began working for Employer in March 1987, when Claimant was 22 years old. He primarily worked on a wire-drawing machine, which drew wire down to a smaller diameter.

On or about February 4, 2004, Claimant was pulling a one-half inch wire when he felt "a pop" in his back. Within an hour, his low back hurt. He also began to have pain in his right buttocks and down his right leg. A CT scan showed a large herniated disc at the L5-S1 level that was compressing the S1 nerve. In the months that followed, Claimant was treated with epidural steroid injections, physical therapy and pain

---

[1] Claimant also appealed, but he presented no other issues for decision.

medication. Despite these interventions, the pain continued. In early October 2005, Claimant underwent a "nucleoplasty," which is an outpatient surgical procedure involving the aspiration of fluid from the ruptured disc. He received "some benefit" from the nucleoplasty. Claimant "was doing pretty good, didn't have any problems." Claimant continued working through December 2005. At that time, Employer was shutting down the wire-drawing division. Claimant was temporarily transferred to maintenance, where he disassembled equipment.

On December 16, 2005, Claimant stepped on a rotted apron that collapsed. He fell about four feet into a pit, landing on his back on a steel beam. He immediately started having the same kind of pain he had experienced after his 2004 accident, "but magnified." Claimant continued to work the rest of the day. He saw a doctor on December 19th and was diagnosed as having a rib contusion. Claimant was given a rib belt and more pain medication. Because the wire-drawing division was being closed, Claimant worked for Employer only five more days after the second accident.

In mid-January 2006, a CT scan revealed healing fractures at the left L2 and L3 transverse processes. Claimant also was having pain in his low back, right buttocks and leg. This pain was similar to what he had experienced in the past after his low back injury and subsequent nucleoplasty. In February 2006, Claimant went to Missouri Vocational Rehabilitation in an effort to return to work. He also continued to receive treatment for his low back and leg pain.

In October 2006, Claimant underwent a total disc replacement at the L5-S1 level. The surgeon performing the surgery, Dr. Todd Harbach, released Claimant from care on January 10, 2007. In early February, Claimant went to work with his cousin in a guttering and vinyl siding business. Claimant was only able to work for six months. The

3

pain in his back and buttocks got worse, and he was so uncomfortable he could not sleep at night. Claimant quit working in early July 2007. Treatment for his low back pain continued through 2008.

Claimant filed separate claims for workers' compensation benefits for his 2004 and 2005 accidents. Both claims were tried before an administrative law judge (ALJ) in early February 2012. Claimant testified on his own behalf. He also called his wife, teenage son, cousin, in-laws and a neighbor as witnesses. The latter witnesses testified about their observations of Claimant's limitations and the dramatic changes that developed after his first accident. The parties also offered depositions and reports from various experts, including a vocational expert and medical experts.

Claimant's medical expert, Dr. Koprivica, performed an independent medical evaluation of Claimant in October 2009. Dr. Koprivica diagnosed Claimant with "failed back syndrome" following his total disc replacement at the L5-S1 level. Dr. Koprivica opined that this diagnosis necessitated severe lifting and motion restrictions for Claimant and required that he lie down at least every two hours for pain relief. Claimant's need to lie down resulted, in part, from fatigue caused by lack of restorative sleep at night due to sleep interruption from pain. Dr. Koprivica further opined that Claimant's severe pain and need for narcotic pain medication imposed limitations on his concentration and retraining capacities. In Dr. Koprivica's opinion, Claimant was permanently and totally disabled due to failed back syndrome.

Dr. Koprivica attributed Claimant's failed back syndrome to the 2004 injury. The nucleoplasty performed before the 2005 accident had no long-term benefit because the pain relief was only temporary. Although Claimant had suffered transverse process fractures at L2 and L3 from the 2005 accident, Dr. Koprivica opined that the 2004

4

accident was a substantial factor in causing Claimant's herniated disc, his surgeries and the discogenic pain at L5-S1. Comparison of diagnostic studies did not reveal any new injury to L5-S1 following the 2005 accident. Dr. Koprivica concluded that Claimant was permanently and totally disabled due to the 2004 accident alone. In Dr. Koprivica's opinion, maximum medical improvement (MMI) for the 2004 injury was not reached until September 4th of 2008.[2] Claimant was temporarily disabled up to that time and permanently disabled thereafter.

Claimant also offered the deposition of Wilbur Swearingin, the only vocational expert in the case. Swearingin opined that Claimant was not employable in the open labor market. Swearingin would not expect an employer to hire Claimant, given his need for accommodations with respect to lifting, bending, standing, walking, sitting and lying down every few hours.

Employer presented opinions from Dr. Jeffrey Woodward and Dr. Allen Parmet. Dr. Parmet agreed with Dr. Koprivica that Claimant's nucleoplasty could have only provided temporary pain relief and had no long-term benefit. Drs. Woodward and Parmet disagreed with Dr. Koprivica's conclusion that Claimant was permanently and totally disabled from the 2004 accident alone.

In September 2012, the ALJ issued a single award addressing both claims. The ALJ specifically found Claimant and his witnesses "credible and persuasive." The ALJ found that Claimant was permanently and totally disabled because:

> I had an opportunity to observe Claimant as he testified, and I find Dr.
> Koprivica's testimony that [Claimant] must lie down through the day for

---

[2] That date was Claimant's last visit with Dr. Benjamin Lampert at the St. John's Pain Management Center. MMI exists on the date when the claimant's condition has reached the point that no further progress is expected. *Cardwell v. Treasurer of State of Missouri*, 249 S.W.3d 902, 910 (Mo. App. 2008).

pain relief to be credible. This limitation alone, according to Wilbur Swearingin, vocational expert, will disqualify Claimant from working in the competitive workforce. I find this testimony to be credible and determinative.

The ALJ also found that the 2004 accident caused Claimant's permanent and total disability.[3] In so finding, the ALJ relied on the opinions of Drs. Koprivica and Parmet. According to the ALJ, these doctors made "it clear that it was predictable that the ruptured disc caused by the first accident could not be repaired by the nucleoplasty. It was more likely than not that it would have failed and the symptoms would have recurred even if [Claimant] had not had the second accident." The ALJ believed Dr. Koprivica's testimony that the second accident, although causing a recurrence of symptoms, was "inconsequential in the progression of the disability at the L5-S1 level." The ALJ also believed Dr. Koprivica's testimony that Claimant reached MMI September 4, 2008. In addition to benefits for permanent total disability, the ALJ ordered Employer to pay Claimant benefits for past medical expenses, mileage and temporary total disability.

After applications for review were filed, the Commission issued its final awards for both claims. It adopted the ALJ's findings, conclusions, decision and award with respect to the issues raised on appeal.

---

[3] Claimant's 2004 injury was governed by the law then in effect, which stated that "[a]n injury is compensable if it is work related. An injury is clearly work related if work was a *substantial factor* in the cause of the resulting medical condition or disability." § 287.020.2 RSMo (2000) (emphasis added). Dr. Koprivica opined that the 2004 accident was a substantial factor in causing the need for Claimant's care and treatment. The definition of "injury" was amended in 2005 to state that "[a]n injury by accident is compensable only if the accident is the *prevailing factor* in causing both the resulting medical condition and disability." § 287.020.3(1) RSMo Cum. Supp. (2005) (emphasis added). The ALJ applied this new definition to Claimant's 2005 injury.

**Standard of Review**

We will review the ALJ's findings and conclusions in this appeal because they were adopted by the Commission. *Harness v. Southern Copyroll, Inc.*, 291 S.W.3d 299, 303 (Mo. App. 2009). This Court must decide whether the Commission, upon consideration of all the evidence before it, reasonably could have made its findings and reached its result. *Hornbeck v. Spectra Painting, Inc.*, 370 S.W.3d 624, 629 (Mo. banc 2012).[4] We defer to the Commission's factual findings and recognize that it is the Commission's function to determine the credibility of witnesses and the weight to be given to their testimony. *Id*.; *Underwood v. High Road Indus., LLC*, 369 S.W.3d 59, 66 (Mo. App. 2012). "[C]onflicting medical theories present a credibility determination for the Commission to make." *Armstrong v. Tetra Pak, Inc.*, 391 S.W.3d 466, 470 (Mo. App. 2012). Therefore, the Commission's decision as to which of the various medical experts to believe is binding on this Court. *Id*. at 471. We will not substitute our judgment on issues of fact where the Commission acts within its powers, even if we would arrive at a different initial conclusion. *Underwood*, 369 S.W.3d at 66. We review questions of law *de novo*. *Id*.

**Discussion and Decision**

*Point I*

Appellants' first point contends the Commission erred by finding Claimant to be permanently and totally disabled by his 2004 accident. We apply the law in effect when

---

[4] "A court must examine the whole record to determine if it contains sufficient competent and substantial evidence to support the award, i.e., whether the award is contrary to the overwhelming weight of the evidence." *Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220, 222-23 (Mo. banc 2003); *see also* MO. CONST. art. V, § 18; § 287.495.1 RSMo (2000). This is because an award "contrary to the overwhelming weight of the evidence is, in context, not supported by competent and substantial evidence." *Hampton*, 121 S.W.3d at 223. Such an award will be rare. *Id*.

7

that injury occurred. *See Pruett v. Federal Mogul Corp.*, 365 S.W.3d 296, 303-04 n.4 (Mo. App. 2012). In 2004, all provisions of the Workers' Compensation Act were liberally construed to extend benefits to the largest possible class and to resolve any doubts as to the right of compensation in the employee's favor. *See* § 287.800; *Robinson v. Hooker*, 323 S.W.3d 418, 423 (Mo. App. 2010).[5] Section 287.020 defined the term "total disability" to mean the "inability to return to any employment and not merely mean inability to return to the employment in which the employee was engaged at the time of the accident." § 287.020.7. As we explained in *Cambron v. Treasurer of State*, 404 S.W.3d 330 (Mo. App. 2013):

> "Any employment" has been interpreted to mean "any reasonable or normal employment or occupation." The approved legal standard for determining [permanent total disability] applies two tests: in general, whether the claimant is able to compete on the open job market; and, specifically, whether an employer would reasonably be expected to employ the claimant in his or her present physical condition.

*Id*. at 335 (internal citations omitted). Thus, an employee can be totally disabled without becoming completely inactive or inert. *Underwood*, 369 S.W.3d at 66. Whether an employee is permanently and totally disabled is a factual question. *Id*. The testimony of a claimant or other lay witnesses as to facts within the realm of lay understanding can constitute substantial evidence of the nature, cause and extent of the disability, especially when taken in connection with, or when supported by, some medical evidence. *Grauberger v. Atlas Van Lines, Inc.*, 419 S.W.3d 795, 801 (Mo. App. 2013).

Appellants contend the evidence established that Claimant "is employable as he did work for a substantial period of time following his injury" and "the preponderance of the medical experts found [Claimant] capable of working ...." Based on that premise,

---

[5] All references to statutes are to RSMo (2000) unless otherwise indicated.

Appellants claim the Commission's finding of permanent total disability is not supported by competent and substantial evidence. We disagree.

Appellants' argument amounts to nothing more than an assertion that the Commission should have believed Appellants' medical experts. It is well settled that "conflicting medical theories present a credibility determination for the Commission to make" and that "the Commission's decision … as to which of the various medical experts to believe is binding on this Court." *Armstrong*, 391 S.W.3d at 470-71; *see Underwood*, 369 S.W.3d at 66 (stating that an appellate court will not substitute its judgment on issues of fact). Claimant and lay witnesses who knew him testified about Claimant's limitations and the major changes in him that developed after the 2004 accident. Dr. Koprivica opined that Claimant was permanently and totally disabled by this accident alone because it led to his failed back syndrome. According to Dr. Koprivica, this syndrome necessitated severe lifting and motion restrictions for Claimant and required that he lie down at least every two hours. Dr. Koprivica also opined that Claimant's severe pain, and the need for narcotic pain medication to control it, impeded his ability to concentrate and be retrained. Given Claimant's need for accommodations with respect to lifting, bending, standing, walking, sitting and lying down every few hours, vocational rehabilitation expert Swearingin opined that Claimant was not employable in the open labor market. This evidence, which the Commission found credible, provides ample evidentiary support for the finding that Claimant's failed back syndrome made him unable to compete on the open labor market. *See, e.g.*, *Grauberger*, 419 S.W.3d at 799; *Underwood*, 369 S.W.3d at 69; *Rader v. Werner Enterprises, Inc.*, 360 S.W.3d 285, 301-02 (Mo. App. 2012); *Martin v. Town and Country Supermarkets*, 220 S.W.3d 836, 847 (Mo. App. 2007). Point I is denied.

9

*Point II*

Appellants' second point contends the Commission erred in finding Claimant to be permanently and totally disabled as a result of the 2004 accident alone. Appellants present two arguments in support of this point.

Appellants first argue that the liability to pay Claimant's permanent and total disability benefits lies with the Fund instead of Employer. According to Appellants, the Commission erred in finding Claimant permanently and totally disabled as a result of the 2004 accident alone, rather than in combination with the 2005 accident. The premise of Appellants' argument is that the Commission misapplied the law in failing to first determine the degree of disability from Claimant's last, 2005 injury before considering his 2004 injury.

Appellants base this argument upon their reading of the statute governing the Fund and cases involving a single claim with pre-existing work injuries.[6] Appellants have cited no case, and we are aware of none, that supports Appellants' position when two or more separate claims are considered together by the Commission. When multiple claims are involved, the "last injury" is evaluated within *each* claim, and each claim is considered in order of occurrence. *See, e.g.*, ***Landman v. Ice Cream Specialties, Inc.***,

---

[6] Under § 287.220.1, "the employer is liable only for the amount of disability caused by the current injury, and the [F]und is liable in the amount of the increase in disability caused by the synergistic effect of the two injuries." ***Pierson v. Treas. of Missouri***, 126 S.W.3d 386, 389 (Mo. banc 2004); ***Claspill v. Fed Ex Freight East, Inc.***, 360 S.W.3d 894, 897 (Mo. App. 2012). "When assessing Fund liability, the Commission must first determine the degree of disability from the last injury alone." ***Pursley v. Christian Hosp. Northeast/Northwest***, 355 S.W.3d 508, 513 (Mo. App. 2011); *see also* ***Stewart v. Johnson***, 398 S.W.2d 850, 854 (Mo. 1966). Once this determination is made, pre-existing disabilities are relevant to determine the combined effect with the last injury. ***Pursley***, 355 S.W.3d at 513; ***Claspill***, 360 S.W.3d at 897.

107 S.W.3d 240, 246-47 (Mo. banc 2003) (earlier of two claims considered first)[7]; **Shepard v. Yellow Transp.**, 352 S.W.3d 681, 681 (Mo. App. 2011) (earliest of three claims considered first); **Pace v. City of St. Joseph**, 367 S.W.3d 137, 143 (Mo. App. 2012) (earliest of four claims considered first). Furthermore, in **Pace**, the western district of this Court upheld the Commission's determination that the claimant was permanently and totally disabled as a result of the first accident alone. **Id**. at 148-50. Thus, contrary to Appellants' argument, a compensable injury occurring before another claimed compensable injury can render an employee permanently and totally disabled without consideration of the later injury. *See id*. Therefore, the Commission did not misapply the law in failing to first determine the degree of disability from Claimant's 2005 injury before considering his 2004 injury.

Appellants next argue that the Commission finding that Claimant was permanently and totally disabled by the 2004 accident is not supported by competent and substantial evidence. We disagree. Both Dr. Koprivica and Dr. Parmet testified that Claimant's ongoing problems were related to the injury at the L5-S1 level that Claimant sustained in the first accident. Dr. Koprivica opined that: (1) the 2004 accident was a substantial factor in causing Claimant's current medical condition and disability from failed back syndrome; and (2) Claimant's failed back syndrome caused him to be permanently and totally disabled by the 2004 accident alone. Comparison of diagnostic studies did not reveal any new injury to L5-S1 following the second accident. Dr. Koprivica testified that the second accident, though causing a recurrence of symptoms, was "inconsequential in the progression of the disability at the L5-S1 level." This evidence is sufficient to support the Commission's determination. *See, e.g.*, **Johnson v.**

---

[7] **Landman** was overruled on other grounds by **Hampton**, 121 S.W.3d at 220.

*Indiana Western Express, Inc.*, 281 S.W.3d 885, 890-91 (Mo. App. 2009) (affirming the Commission's decision that the first injury, rather than a more recent injury, caused claimant's ongoing symptoms and need for medical care); *Gordon v. City of Ellisville*, 268 S.W.3d 454, 459-60 (Mo. App. 2008) (similar holding); *see also Pace*, 367 S.W.3d at 148-50. Accordingly, the Commission did not err in determining that Claimant was permanently and totally disabled as a result of the 2004 accident alone. Point II is denied.

*Points III, IV and V*

Appellants' third, fourth and fifth points contend that the Commission erred in ordering Employer to pay past medical expenses, mileage and past temporary total disability benefits through September 4, 2008.[8] *See* § 287.140 (employer to provide medical and other services, including transportation, as may reasonably be required to relieve effects of injury); *Stevens v. Citizens Memorial Healthcare Foundation*, 244 S.W.3d 234, 238 (Mo. App. 2008) (temporary total disability covers period of time from the accident until the employee can either find employment or has reached MMI). Appellants do not dispute the amount of past medical expenses, mileage and past temporary total disability benefits awarded to Claimant. Instead, Appellants contend the Commission's finding that Employer is responsible to pay each of these benefits is not supported by competent and substantial evidence. We disagree.

Appellants argue Employer should not be held responsible to pay any of the above benefits after January 10, 2007 when Claimant's surgeon, Dr. Harbach, released Claimant from care following his total disc replacement three months earlier. Appellants

---

[8] Claimant's Exhibit CC, which was admitted in evidence, detailed each of these requested benefits. The Commission specifically found "the medical services as requested in Exhibit CC were necessary to treat the Claimant for injuries suffered in the accident of February 2004 and that the charges are reasonable."

argue that past medical expenses and mileage after January 10, 2007 are unrelated to the 2004 accident and that Claimant reached MMI as of that date. As Appellants concede, the Commission relied on Dr. Koprivica's testimony that Claimant reached MMI on September 4, 2008. Appellants simply argue that "Dr. Harbach's opinion should carry far greater weight than a retained expert giving an opinion after the fact." That argument ignores the well-settled principle that this Court "defers to the Commission on issues involving the credibility of witnesses and the weight to be given to their testimony." *Underwood*, 369 S.W.3d at 66. Because conflicting expert opinions were offered as to the date of Claimant's MMI, it was up to the Commission to reconcile the evidence and determine the facts. *See id*. at 68. The Commission believed Dr. Koprivica's testimony, and we defer to that determination. *Id*.; *Martin*, 220 S.W.3d at 843. Consequently, the Commission's finding that Employer is responsible to pay Claimant's past medical expenses, mileage and past temporary total disability benefits is supported by competent and substantial evidence. Points III, IV and V are denied.

We affirm each final award allowing compensation for the 2004 claim and the 2005 claim.


JEFFREY W. BATES, P.J. – OPINION AUTHOR

DON E. BURRELL, J. – CONCUR

MARY W. SHEFFIELD, J. – CONCUR